(No. 34861.—

WALLENDER-DEDMAN COMPANY, Appellee, *vs.* THE DEPARTMENT OF REVENUE, Appellant.

*Opinion filed January 23, 1959.*

LATHAM CASTLE, Attorney General, of Springfield, (WILLIAM C. WINES, RAYMOND S. SARNOW, and A. ZOLA GROVES, of counsel,) for appellant.

VAIL, MILLS & ARMSTRONG, of Decatur, and J. NORMAN GODDESS, of Chicago, for appellee.

Mr. JUSTICE DAVIS delivered the opinion of the court:

Plaintiff, Wallender-Dedman Company, is a commercial or job printer that also operates a retail department in which it sells furniture, fixtures, office supplies, stationery and similar items. Plaintiff incurs retailers' occupation tax liability in connection with sales from this department and such sales are not involved in this controversy. However, the Department of Revenue, defendant, and here referred to as the Department, rendered a deficiency assessment against the plaintiff in the amount of $1,958.25 for retailers' occupation taxes measured by the receipts from the sale of certain items printed by plaintiff upon special order for its customers. Plaintiff brought this action in the circuit court of Macon County under the Administrative Review Act. The trial court set aside this part of the assessment, and the Department appealed to this court.

The work of plaintiff's job printing department is initiated by salesmen who bring in a customer's copy which is then routed to a compositor-printer. Each printer in the shop has served an apprenticeship of at least seven years. The printer composes the job according to copy, selects and assembles the size, style and position of type and cuts to be used, determines the lines and spaces, and sets up the job in accordance with his conception of the customer's needs. He then runs a trial proof and makes further changes, if necessary, whereupon such proof is submitted to the customer for approval. Thereafter the job is turned over to a pressman who prepares the tympan and aligns the type. The pressman selects the ink and frequently mixes different colors to meet the customer's specifications. Often the jobs are multicolor and require different set ups of the type and color of ink, and additional runs through the press. The plaintiff purchases the paper stock in vari-

ous sizes, qualities and colors to take care of the jobs. Tags and cards are sometimes purchased in stock sizes, however, in most instances the stock is cut to size by plaintiff.

While there is no fixed percentage between the cost of the paper stock and the price of the job delivered, the stock may run as high as one third of the sales price or as low as one tenth. In connection with each job, labor comprises the principal cost.

The Department assessed the retailers' occupation tax upon the receipts from the sale of fourteen categories of printed material furnished by the plaintiff upon its customers' orders, exemplified by seventy-eight samples of printing introduced in evidence, thirty-eight of which appear in the abstract. These exhibits are broadly categorized as booklets, office forms, stock cut cards, index cards, tags, gummed labels, postcards and postal cards, stock furnished, stock ruled forms, letterheads, envelopes, checks and vouchers, ruled and printed forms, and miscellaneous. In all of these classifications the copy imprinted on the paper is in accordance with the specifications and order of the particular customer. The plaintiff prints the customer's requirements on blank paper with the exception of certain ruled stock paper which has horizontal and vertical lines, and prints thereon, in the body of the ruled stock, the copy specified. It is undisputed that these stock ruled forms are rarely sold without additional printing. The specific items taxed run the gamut from booklets comprising the constitution and by-laws of a particular organization, to simple "Sold" cards and shipping labels bearing little individuality, but furnished in accordance with the particular customer's specifications.

The Department contends that the printing of these items is so standardized that they constitute sales of tangible personal property at retail and relies upon Department rules 2, 9, and 17. Rule No. 2, after exempting generally vendors of newspapers, magazines, periodicals, books, sheet

music or phonographic recordations, provides that "Notebooks, diaries, baby books, guest registers and other similar books which are used primarily for the recording of information are not the kind of 'books' referred to in the preceding sentence." Rule No. 9 provides in pertinent part as follows:

"2. PERSONS ENGAGED IN THE GRAPHIC ARTS—WHEN LIABLE FOR TAX. Persons engaged in the graphic arts or related occupations may, under certain circumstances, be considered to be engaged in the business of selling tangible personal property to purchasers for use or consumption, in which event they incur retailers' occupation tax liability. This is the case when they sell to purchasers for use or consumption tangible personal property which they have produced, but which they have not produced on the special order of a particular customer, or tangible personal property which, even if produced on special order, has commercial value * * *. For example, persons who are engaged in the graphic arts or related occupations are engaged in the business of selling tangible personal property to purchasers for use or consumption when they sell * * * such items as printed forms which are stock or fairly standardized items, and when they sell to purchasers for use or consumption such items as signs, pictures and the like which, even though lacking commercial value, have not been produced on special order for the purchaser. * * *"

Rule 17 provides that vendors are selling tangible personal property for use and consumption and the tax applies when "Price tags and other tags, bookkeeping forms, sales tickets, order blanks, invoice forms, greeting cards, wedding and other invitations and the like, which are sold as stock or fairly standard items, have commercial value," and that such vendors "cannot claim exemption from the tax as to their total receipts from such sales merely because of the fact that they personalize such items for purchasers."

However, upon hearing in the circuit court, the Department stipulated that letterhead stationery and return address envelopes were not taxable and that in cases where the customer supplied the paper stock which was used in the printing of any item, no tax was due.

Plaintiff contends that all of the transactions claimed to measure the tax comprise the rendition of a· service in the graphic arts, and are nontaxable under the doctrine of *Adair Printing Co. v. Ames,* 364 Ill. 342. The Department frankly asks that we overrule or limit the teaching of *Adair Printing Co.* and suggests that we have presaged such a ruling by our decision in *Sterling Steel Casting Co. v. Department of Revenue,* 7 Ill.2d 244. The question before us, broadly stated, is whether the transactions involved represent the "sale of tangible personal property at retail" within the purview of the Retailers' Occupation Tax Act, (Ill. Rev. Stat. 1957, chap. 120, pars. 440-453 incl.) the receipts of which measure the tax, or whether the printing of the items in question is primarily the rendition of a service so as to be immune from the tax. Such determination requires a reappraisal of the printed items created by this segment of the graphic arts.

We have consistently held certain service occupations to be exempt from the retailers' occupation tax. Among these are blue-printing and commercial photography, (*Burgess Co. v. Ames,* 359 Ill. 427) ; printing, (*Adair Printing Co. v. Ames,* 364 Ill. 342), and electrotyping and stereotyping. (*A.B.C. Electrotype Co. v. Ames,* 364 Ill. 360.) As a result of these decisions, rule No. 9 of the Department classifies printers, together with book binders, photographers, electrotypers, commercial artists, blue-printers and others as "Persons engaged in the graphic arts," and not liable for the tax when they employ the graphic arts to produce, "on the special order of a particular customer," tangible personal property which has use or value (other than salvage value) only to the purchasers. However, the

rule provides that persons engaged in the graphic arts are liable for the tax when they sell, even on special order, tangible personal property which they have produced, which has commercial value, such as "printed forms which are stock or fairly standardized items."

To understand the somewhat general language of the Department's rules, it is necessary to consider *Adair Printing Co.* v. *Ames,* 364 Ill. 342, and its predecessor, *Burgess Co.* v. *Ames,* 359 Ill. 427. In *Burgess* we held blue-printing to be exempt from the tax, stating at 359 Ill. 429:

"The raw material with which blue-printers and photostaters work is sensitized paper of such a chemical character as to be destroyed for any further use when exposed to light. It is alleged in the bill and admitted by the motion to dismiss that they have no property right in the sketch, drawing or other document which is brought to them to be reproduced or copied. By the use of their apparatus and the destruction of sensitized paper they produce for each individual customer the required copies of the customer's own property. It is the contention of the department that the paper, with the reproduction on it, is the subject of sale; but this can hardly be true under the act we are considering, because the paper is destroyed when the exposure is made, and it has no further use or value to anyone other than the person interested in that particular reproduction. We can perceive no logical difference between the paper upon which a photostatic copy of something is made or a blue-print produced, and that paper which a lawyer uses for writing a will or deed, a doctor for writing a prescription, or an abstractor for showing a chain of title. The paper is a mere incident; the skilled service is that which is required."

In *Adair Printing Co.* 364 Ill. 342, 343, we came to the same conclusion:

"The trial court properly held that this case is controlled by *Burgess Co.* v. *Ames,* 359 Ill. 427, as there is

no substantial difference in principle. In that case, referring to blue-printers, we said: 'The paper is destroyed when the exposure is made, and it has no further use or value to anyone other than the person interested in that particular reproduction.' The same is true of the work carried on by appellees. Copy for printed matter is delivered to them, and in the process of carrying out their contract of service they use ink for the purpose of destroying plain paper so far as its commercial value is concerned. From that time it is of no use or value to any person other than the one for whom the printing is done. It should be apparent that letter-heads, circulars, mail-order catalogues, printed briefs for an attorney, or any other special printed matter, would be without commercial value, and it follows that the printer is engaged only in service. The appellees are not engaged in the business of selling tangible personal property but in the business of printing—one of the graphic arts."

In these cases, the blue-printer, photostater and printer destroyed the general commercial value of the paper stock by the blue-printing, photostating and printing arts, and replaced it with a special economic value to the individual purchaser. In the case at bar, the undisputed testimony establishes that this phenomenon exists with reference to each of the printed items under scrutiny, which range from the simple to the complex. The slight commercial value as paper stock was effaced by the printing process which made the item valuable for the particular purpose of the individual customer. In all cases, the printing was more than the mere personalizing of an otherwise valuable item. The real worth of the printed piece was created through the exercise of skill in the graphic arts.

The Department concedes that these items are within the scope of *Adair Printing Co.*, but urges that we overrule this decision in that it is inconsistent with our later pronouncements in *Acme Printing Ink Co.* v. *Nudelman,*

371 Ill. 217, and *Sterling Steel Casting Co.* v. *Department of Revenue*, 7 Ill.2d 244. These cases are distinguishable. In *Acme Printing Ink Co.* we held that the manufacture and sale of printing ink is a business "in which personal service, skill and artistic ability have entered only to a comparatively small degree such as is found in most com-. petitive trades and businesses," and held that "the primary occupation of plaintiffs is not the rendering of service but is the manufacture and sale of printing ink." We differentiated *Adair Printing Co.* by pointing out "that the skill and services rendered far outweighed the value of the materials in the articles sold."

In the *Sterling case,* we followed the distinction pointed out in *Acme Printing Ink Co.* and, after analyzing the occupation of the plaintiff, we stated at page 250: "Upon the record before us, we hold that plaintiff is not primarily engaged in furnishing any technical engineering service apart from its general production 'know-how.' Plaintiff is in the business of producing and selling tangible personal property at retail, in which the element of service is incidental. It is not in the business of furnishing services, to which the materials employed and the sales made are incidental."

In varying language we stated this principle in *Snite* v. *Department of Revenue*, 398 Ill. 41, 46: "If the article sold is the substance of the transaction and the service rendered is merely incidental to and an inseparable part of the transfer to the purchaser of the article sold, then the vendor is engaged in the business of selling at retail, and the tax which he pays for the privilege of engaging in such business is measured by the price which the purchaser pays for the article and the service incident thereto."

The late case of *Oscar L. Paris Co.* v. *Lyons*, 8 Ill.2d 590, further established that the *Sterling case* was no departure from the principles theretofore announced as ap-

plied to the graphic arts. That case involved the business of installing special order carpeting, and we held, in the absence of any contradictory evidence, that plaintiff's operations necessarily involved special skill, talents, training and experience. Ot page 595 we stated: "It seems to us that this record presents a problem that is distinguishable from the one in the *Sterling case,* in that although the commodity is sold on special order, the *Sterling case* merely involved the production and delivery of items on a mass production factory basis according to patterns furnished it by the customers, whereas in the present case the special skills of the plaintiff in determining and selecting the pattern, color and dye of carpeting and in properly cutting, sewing and fitting the carpeting together and installing the same is contracted for."

We believe that the contention of the Department fails in that it ignores the basic proposition stated in *Ingersoll Milling Machine Co.* v. *Department of Revenue,* 405 Ill. 367, 370, where we said: "In determining whether or not tax liability exists in this particular case the question is presented as to what is the primary occupation of the appellee. The tax sought to be imposed is an occupation tax and not a sales tax, and, to determine the taxability of the particular sale herein involved, the real occupation of the appellee must be observed to determine its liability for tax."

In examining the undisputed testimony of the plaintiff, we conclude that plaintiff's primary occupation in producing the items here involved is that of commercial printing, and that such occupation involves the utilization of specialized skill, knowledge and experience to accomplish the end result desired by the customer, and that the paper utilized is merely incidental to the rendition of the service. We so classified the business of printing in *Adair Printing Co.* and, in the case at bar, the Department has presented neither evidence nor compelling argument to alter our

initial view of printing as a service in the graphic arts and therefore not subject to the provisions of the Retailers' Occupation Tax Act.

The judgment of the trial court is accordingly affirmed.

*Judgment affirmed.*