(No. 42177.—)

J. H. WALTERS & COMPANY, Appellee, *vs.* THE DEPARTMENT OF REVENUE *et al.*, Appellants.

*Opinion filed December 19, 1969.*

WILLIAM J. SCOTT, Attorney General, of Springfield, (FRANCIS T. CROWE and HERMAN R. TAVINS, Assistants Attorney General, of counsel,) for appellants.

JOHN W. HOEFERT, of Alton, for appellee.

Mr. CHIEF JUSTICE UNDERWOOD delivered the opinion of the court:

This is a revenue case appealed directly to this court from the circuit court of Madison County which declared that three final tax assessments issued by the Department of Revenue were contrary to the manifest weight of the evidence. The question presented is whether the taxpayer's sales of sheet metal fabrications pursuant to special orders constituted "the business of selling tangible personal property at retail" within the meaning of the Retailers' Occupation Tax Act (Ill. Rev. Stat. 1963, ch. 120, par. 440 *et seq.*), so as to sustain the tax liability represented by the Department's final assessments, or was a service occupation, exempt from the tax.

Four hearings were held before a Department of Revenue hearing officer, whose conclusion that the taxpayer's occupation was taxable to the extent of all sales in issue was adopted by the Department. A very large number of sales was involved, and it was agreed during the course of the hearings that evidence adduced as to four pages of sales involved, exhibits D, E, F and G, would be representative, *pro rata,* of a specified group of sales amounting to approximately $191,000. A similar agreement was reached as to an

additional $80,000 in sales, with the selected invoices of exhibit K as the *pro-rata* basis.

The Department established its *prima facie* case at the hearings through presentation of amended tax returns prepared by it for the taxpayer, and presented no further evidence to controvert taxpayer's contention that the occupation involved was primarily a service occupation. Taxpayer offered extensive testimony and other evidence to support its qualification for exemption under the Department of Revenue's Rule No. 3, which in relevant portions provides:

## "SELLERS OF MACHINERY, TOOLS AND THE LIKE

I. WHEN LIABLE FOR RETAILERS' OCCUPATION TAX

Sellers of machinery, tools, dies, jigs, patterns, gauges and the like to users or consumers incur retailers' occupation tax liability except as specified in paragraph 2 hereof. This is true whether the seller installs such tangible personal property for the purchaser or not.

\* \* \*

The fact that it is not a stock item and is only produced after an order is received, or is an alteration of a standard item, is not sufficient to exempt it from retailers' occupation tax unless it meets all the exemption tests of paragraph 2 below.

Even if the sale would otherwise qualify for exemption under paragraph 2 of this rule, the sale is taxable if the designing of the property that is to be sold is done by the purchaser, or by someone other than the seller hired by the purchaser, but the sale is not taxable if the seller is responsible for furnishing the service of designing such property or for contributing substantially to the designing of such property.

\* \* \*

"2. WHEN NOT LIABLE FOR RETAILERS' OCCUPATION TAX

The seller of a special machine, tool, die, jig, pattern, gauge or other similar item is engaged primarily in a service occupation, rather than in the business of selling tangible personal property, and so does not incur retailers' occupation tax liability with respect to the sale, if the following tests for exemption are all met in the transaction:

(a) The purchaser employs the seller primarily for his engineering or other scientific skill to design and produce the property on special order for the purchaser and to meet the particular needs of the purchaser;

(b) the property has use or value only for the specific purpose for which it is produced, and

(c) the property has use or value only to the purchaser.

On the requirement of design by the seller, it is sufficient if the seller is responsible for making a substantial contribution to the designing of the property that is to be produced on special order and sold.  *  *  *."

Qualification for exemption under tests (b) and (c) above was not seriously challenged by the Department; but as to test (a) the Department accepted the hearing officer's conclusion that "The evidence offered by taxpayer could not sustain an exemption under Subsection 2 of Rule 3 of the Retailers' Occupation Tax Act since the taxpayer did not adequately establish that he made a substantial contribution to the engineering design of items produced but merely showed his method of fabrication along with several exhibits which would only be considered as working sketches." It is this conclusion, therefore, which the circuit court found to be against the manifest weight of the evidence, and in reviewing that court's decision we must examine the evidence introduced at the hearing.

As summarized by the hearing officer:

"Taxpayer testified that he produces items usable by the purchaser only for a particular purpose and that the

finished product had value only to the buyer. Further, that Taxpayer made a substantial contribution to design, in many cases designing the ordered item initially, and in other cases contributing substantially to the design when furnished with designs from customers. Taxpayer offered proof of design through three (3) 'engineers,' two of whom were from Taxpayer's major customers, all of whom testified to the preliminary steps in the method of fabrication of the ordered items, and that in instances where plans were submitted to Taxpayer, he had to measure and determine what needed to be done to make the finished product even though engineers of various purchasers supplied the details."

A few examples of the testimony will be helpful in clarifying the issue here. J. B. Walters of the taxpayer company indicated the type of work done to fulfill various special orders. He stated that regarding one particular order from Laclede Steel Company, "someone had an idea if they had this particular thing on their wire lines, they could possibly increase their production. * * * someone from my company went to the Laclede Steel Mill, measured the existing conditions that exist on their wire lines and tried, or we did design a housing that could be put in place so that the principle that they had in mind could be proven, whether it would work or not." Regarding another Laclede order, "we had to go to the Laclede Steel Company, take the necessary measurements, come back to the shop, design this particular penthouse to fit the conditions that exist at Laclede Steel Company and fabricate it." Walters testified to his company's work regarding an order for which some design work had been done by the buyer: "The Alton Box Board Company on this particular item had a preliminary drawing in existence, but since this was a completely new idea there were a lot of changes made.— Q: And you substantially added to the design of this item? —A: Yes, sir." In another instance Walters testified, "We were given verbal instructions by their maintenance super-

intendent on what he had in mind. We returned to the shop, sketched it out and had them made." The chief engineer of one major buyer testified that at least 90% of his company's special orders from the taxpayer company required engineering and design work on taxpayer's part. In response to the question whether his company ordered items from taxpayer "because of their ability to design and their skill in doing such work?" he replied, "Yes, it saves us time trying to design them ourselves." A similar response was given by the plant engineer of another major purchaser. The plant engineer later commented on the type of "detailed engineering" which was required of taxpayer company in order to fulfill an order where preliminary drawings had been provided by the purchasing company:—"Q: What kind of detailed engineering would it be?—A: So it could be laid out and fabricated." The shop superintendent of the taxpayer company responded "yes" to the question whether it "would be fair to assume that ninety percent of the time your company is called upon to make measurements and then go back to your shop and design it, fabricate and give them the finished products for the purpose the order was initially submitted?" The shop superintendent was later asked the following question: "Are there any items shown on that page [of invoices], in your opinion, that do not and did not need design engineering by your company prior to fabrication?" He responded "I don't think so. I might explain, it's necessary, as a foreman, to do some design engineering of necessity in fabricating it, with the facilities we have in our shop, and therefore, it becomes necessary to work out the details before I turn the job over to my mechanic." The following exchange occurred later, regarding another particular order:

> "Q. Mr. Willie [taxpayer's shop foreman] will you tell the Commission what you did after receiving this special order in order to fabricate this item? What was done by your company?

"A. I field measured the existing conditions after discussing the job with the Plant Maintenance Superintendent and returned to the shop and laid out the necessary sketches to see what that particular fitting would look like, so they would have the desired slope, so the stock would flow and give them the speed needed, and what material should go into it and the braces and then we proceeded with the fabrication.

"Q. And you actually designed the ultimate product prior to fabrication, so that the finished product would be consistent with the purpose for which it would be used and ordered?

"A. That's right."

The preceding examples illustrate the nature of the testimony introduced by taxpayer, which points out that the uncontroverted assertions of several persons were to the effect that about 90 % of the items produced and sold required design work on taxpayer's part. It is also called to our attention that for the sales at issue in exhibits D, E, F and G, the total charges were roughly $16,000 for labor, compared to $7,000 for materials. Also introduced were numerous drawings which had been made by taxpayer company employees in connection with their work on the special order items produced and sold. An examination of the entire record of the hearings indicates the central determination to be made in each instance: Is the "engineering and design" work of the taxpayer "a substantial contribution to the designing of the property that is to be produced on special order and sold," as required by Rule No. 3?

That rule is aimed at an oftentimes elusive distinction between taxable and nontaxable occupations. Although the distinction has frequently been difficult to apply, several criteria have been found helpful. Emphasis has been placed on the ratio between the bare cost of materials and ultimate sales price. (See e.g., *Wallender-Dedman Co.* v. *Department*

*of Revenue,* 15 Ill.2d 485, 487.) The buyer's motive for selecting the particular seller has often been examined, as revealed by this court's observation in *Ingersoll Milling Machine Co.* v. *Department of Revenue,* 405 Ill. 367, at 373: "Here, it is the rendering of the special service to the purchaser which is the subject and object desired in the instant case." (See also, *Material Service Corp.* v. *McKibbin,* 380 Ill. 226, 243.) A further basis for distinction has been whether the item sold was truly a unique "special order" item, or merely a standard item or a repeat order. (See *American Brake Shoe Co.* v. *Department of Revenue,* 25 Ill.2d 354, 359.) The most basic and probative inquiry, however, has continued to be one propounded early in the history of the Retailers' Occupation Tax Act, and utilized frequently by this court: "Thus it is seen, that the first question to be determined is whether the business sought to be taxed is selling personal property at retail, in which service is incidental, or selling services in which supplying materials or making retail sales is but incidental." (*Mahon* v. *Nudelman,* 377 Ill. 331, 335.) Over 30 years ago this court observed, in considering the occupation of supplying photostatic copies of a customer's original, that "The paper is a mere incident; the skilled service is that which is required." *Burgess Co.* v. *Ames,* 359 Ill. 427, 429.

In no instance has the distinction been based solely on the fact that the customer, rather than the taxpayer, conceived the product's design or supplied the specifications. (See *American Brake Shoe Co.* v. *Department of Revenue,* 25 Ill.2d 354, 357; *Wallender-Dedman Co.* v. *Department of Revenue,* 15 Ill.2d 485, 489.) The nontaxable nature of several occupations, which are reasonably analogous to the instant taxpaper's occupation in this connection has been recognized both by this court and by the Department of Revenue. The rationale of the Department's Rule No. 6, exempting the sale of building materials by contractors, was stated by this court: "A contractor holds himself out

to the public as having the skill and knowledge necessary to the construction of certain improvements. He does not represent himself as being engaged in the business of selling building material." (*Material Service Corp.* v. *McKibbin,* 380 Ill. 226, 242.) Rules 9, 17 and 27 exempted the occupations of graphic arts (artists, printers, photographers, *etc.*), personalizing (business cards, name plates, *etc.*), and sign-making, respectively, until it was determined that the items produced were essentially the same as stock retail items, the rules exempted the occupations of making custom curtains, drapes, *etc.* (Rule 6), custom storm doors and windows, *etc.* (Rule 20), and custom tailored clothing (Rule 23). The rationale underlying these exemptions prompted this court to hold nontaxable the business of selling, cutting, and installing carpeting. (*Oscar L. Paris Co.* v. *Lyons,* 8 Ill.2d 590.) It is apparent from this review that there is no strict requirement that the taxpayer conceive the item sold, or design it without direction from the buyer. In many nontaxable occupations, it is the seller's skill at bringing into being an item in strict accordance with the buyer's general design and directions which is sought; *i.e.,* building contractors, printers, sign-makers, *etc.* Thus, if we assume that the various departmental rules cited above are compatible with Rule No. 3's requirement that the seller be "responsible for making a substantial contribution to the designing of the property that is to be produced on special order and sold," it must be that the seller's "design contribution" can be inherent in his skillful and experienced manner of engineering the item. Certainly not every seller of special order items is called upon to exercise the degree of skill and judgment which is necessary to characterize his occupation as nontaxable under Rule No. 3. *Sterling Steel Casting Co.* v. *Department of Revenue,* 7 Ill.2d 244, involved a special order production occupation which failed to qualify for exemption on several grounds, one being that the production operation was on a routine mass production factory basis

for which "no evidence was introduced to show that the skill involved depends in any degree upon whether standard or special order castings are produced." (*Sterling Steel Casting Co. v. Department of Revenue,* 7 Ill.2d 244, 248.) Where the seller's function is not simply a routine labor process as in *Sterling Steel,* but requires the application of a high degree of skill and training in engineering and fabricating the special order items, there may be present a "substantial contribution to the designing of the property * * *," as required for exemption under Rule No. 3.

We must, of course, give proper regard to the Department's findings as to questions of fact, reversing its decision only where its findings are against the manifest weight of the evidence. However, "the judicial deference that is rightly given to administrative agencies on questions of fact and on matters of policy within their province does not relieve this court of its ultimate responsibility of determining whether or not, as a matter of law, the occupation of plaintiff is within the purview of the taxing statute." (*American Brake Shoe Co. v. Department of Revenue,* 25 Ill.2d 354, 361.) In the instant case, the Department's decision that the taxpayer's occupation was taxable to the extent of all sales at issue, was based on findings which were against the manifest weight of the evidence. We do not overlook here the fact that as to some sales at issue, the taxpayer may not have satisfied his burden of establishing that the occupation of producing the items sold was within the exemption of Rule No. 3. It was shown, however, that the greatest proportion of the sales were so engendered. The Department, in attempting to classify all of the sales as being the result of a single taxable occupation, chose not to pursue the possibility that taxpayer might be engaged in more than one occupation—*i.e.,* the taxable sale of items produced simply through routine labor, and the nontaxable sale of items produced through the essential application of highly trained engineering and fabrication skills.

If the Department chooses to propose that taxpayer's "nontaxable work" is a merely incidental adjunct to a predominantly taxable business, we cannot conclude, after finding that taxpayer's nontaxable work predominated, that the taxable work was such a substantial portion of taxpayer's business that it can be taxed as a separate, though secondary occupation.

It was the Department's burden to present this proposition, in view of the fact that its *prima facie* case was overcome by taxpayer. The shift of the burden in such a situation was made clear long ago by this court: "In *Feldstein v. Department of Finance,* 377 Ill. 396, we said: 'A proposed assessment of an occupation tax, being a correction of returns filed by the taxpayer, is *prima facie* correct, but where the only competent evidence on the hearing is the taxpayer's books and his own testimony, which is not so inconsistent or improbable, in itself, as to be unworthy of belief, the *prima facie* case is overcome, and the burden shifts to the Department of Finance to prove its case by competent evidence. *Novicki* v. *Department of Finance,* 373 Ill. 342.' " (*Fashion-Bilt Cloak Mfg. Co.* v. *Department of Finance,* 383 Ill. 253, 257.) Consequently, in the absence of proof to the contrary, we must treat any work which may have been taxable as being merely "incidental" to the nontaxable occupation of taxpayer.

We therefore affirm the judgment of the circuit court of Madison County vacating the final tax assessments.

*Judgment affirmed.*