(No. 37927.—

VELTEN & PULVER, INC., Appellee, *vs.* THE DEPARTMENT OF REVENUE, Appellant.

*Opinion filed November 26, 1963.*

WILLIAM G. CLARK, Attorney General, of Springfield,
(WILLIAM C. WINES, RAYMOND S. SARNOW, A. ZOLA
GROVES, and EDWARD A. BERMAN, Assistant Attorneys
General, of counsel,) for appellant.

WHITESIDE, WHAMOND & WHITESIDE, of Chicago,
(ROBINSON R. WHITESIDE and ROY A. WHITESIDE, of
counsel,) for appellee.

Mr. JUSTICE DAILY delivered the opinion of the court:

The·question here presented is whether the plaintiff,
Velten & Pulver, Inc., in constructing and installing con-
veyor systems for bakeries and in purchasing a specially-
designed machine to be used by it in its manufacturing
process, was subject to retailers' occupation and use taxes
assessed by the Department of Revenue. From a judgment
of the circuit court of Cook County sustaining the tax-
payer's position, the Department of Revenue appeals di-
rectly to this court since the revenue is involved.

Plaintiff is an Illinois corporation which specializes in
designing, fabricating, and installing conveyor systems for
the bakery industry and has various engineers in its employ.
Upon receiving a request for information from a potential
customer, a sales engineer is dispatched to the bakery for
the purpose of studying the problems and making prelimi-
nary drawings, which are further analyzed by other engi-
neers at plaintiff's home office. If defects are discovered in
the preliminary plans, these are pointed out to the sales
engineer with recommendations for correction, and these
changes are then discussed with the customer. At such time

as the preliminary plans are approved by plaintiff's engineering staff, detailed drawings of the equipment are made, and upon their approval by the bakery officials, the manufacture of such equipment is begun. Upon its completion the equipment is installed by plaintiff's erection engineer who makes whatever on-the-spot alterations may be necessary.

A typical installation was that performed by plaintiff for Burny Brothers, a Chicago bakery. As was customary, a sales engineer visited the customer's plant, studied the problem presented, and then prepared preliminary plans which were analyzed by plaintiff's engineering staff. Thereafter, detailed designs were made of the proposed conveyors, switches, and mechanisms necessary to complete the system. Different conveyors were designed for the different bakery products involved so as to transport each from its raw state, into the ovens, through the coolers and icers, into the packaging department, and from there to the loading docks for subsequent delivery. Other conveyors were installed to return the emptied pans from the packaging department to the washers where, after cleaning, they were greased and filled to start another baking cycle. Switching mechanisms were so arranged that any product could be routed to any loading dock, and counting devices were installed so as to separate for packaging purposes bakery products having different types of fillings or icings. The belting itself was designed to carry the sized pans used by Burny Brothers, in some cases lengthwise, in other instances crosswise, and sometimes standing upon their sides. Because it was necessary to run a conveyor through a firewall, plaintiff devised a special conveyor section the width of the wall which could be instantly dropped out of position, thereby releasing a steel plate to close the opening. In all, at least 100 different conveyors and several types of belts were used in the Burny Brothers installation, and the designing, fabrication, and construction took approximately two years to complete. The total cost of the installed conveyor system was $64,981.53.

During this same period of time plaintiff ordered a machine for the processing of steel and rods used in the making of conveyor belts from Planet Products Corporation of Cincinnati, Ohio, which specializes in the design and manufacture of special purpose machines. Planet prepared the necessary plans and specifications for its construction, and the machine was designed to handle the type and size of rods used in plaintiff's business. Planet also delivered and installed the machine in plaintiff's plant and then taught plaintiff's employees how to operate and maintain the equipment. The total amount paid to Planet for this installation was $14,350.

As a result of the Burny Brothers and similar installations of bakery conveyor systems and the purchase of the machine from Planet Products Corporation, the Department of Revenue of the State of Illinois assessed retailers' occupation taxes and use taxes against plaintiff for the period from March 1, 1955, through January 31, 1958, in a total amount of $7,631.36, and upon protest by the taxpayer, administrative hearings were had in the Department. Following such proceedings, the hearing officer concluded that these transactions did involve the sale of tangible personal property for which the tax was payable. Final assessments were thereupon levied against the plaintiff, which then filed its instant complaint for administrative review. As its answer thereto, the Department of Revenue filed the prior administrative proceedings held before the hearing officer, and from this evidence the circuit court found the aforesaid transactions were largely exempted from taxation as essentially service occupations and that the sole sum due by plaintiff under these assessments was $516.23.

In testifying at the administrative hearings, Willis Pulver, the president of plaintiff corporation, pointed out that a conveyor system is designed to fit the needs of a particular bakery, and for this reason no two installations are identical. The type of merchandise to be conveyed, the production

rate, and the baking time must be carefully considered in making recommendations as to the type of conveyor system needed, and in many cases the new equipment must also be designed so as to operate in conjunction with other equipment previously installed by plaintiff or other manufacturers. According to Pulver, the conveyor system itself is composed of the supporting frame, motors, bearings, switches, sensers, timers, belting, counting devices, and other mechanisms which serve to carry the bakery product from its uncooked state through the various baking and packaging processes to the loading dock area. As may be needed for a particular job, plaintiff is equipped to manufacture eighteen different sizes of link belting of different materials, hardness, and length, and plaintiff holds certain patent rights thereon. All of plaintiff's work is by special order and none of the system can be fabricated prior to receiving the customer's order, nor can the parts thereof be stocked. Rather the switches, control mechanisms, belting, and other equipment can be selected only after the particular needs are analyzed. Certain motors are purchased by plaintiff as required for the fabrication of these conveyor systems but because the production rate varies from bakery to bakery, plaintiff must adapt these motors to operate at the desired speed. The motors, belts, and switches designed for one operation could not be used in another, although Pulver admitted that the motors themselves could be reset so as to be utilized in a different system.

Pulver was also of the opinion that the equipment when installed had value, other than salvage, only to the purchaser, and that one of the primary reasons plaintiff has been so successful is because it, unlike suppliers of standard bakery equipment, is able to construct a conveyor system to fit the existing physical plant and thereby eliminate the need for major plant alterations. As for the Planet Corporation machine, this witness testified that in his opinion such equipment would be useless for any purpose other than manu-

facturing the specific parts which plaintiff requires in its operations. No evidence, other than testimony concerning the audit of plaintiff's books by the Department of Revenue, was offered by the defendant.

In arguing the taxability of the instant transactions both parties rely upon Rule 3(2) of the Rules and Regulations of the Department of Revenue which states:

"2. WHEN NOT LIABLE FOR TAX. In a case in which the purchaser employs the seller primarily for his engineering or other scientific skill to design, develop, construct and produce a special machine, tool, die, jig, pattern, gauge or other similar item on special order for and to meet the particular needs of the purchaser, and in such a way that the item, when so produced, had use or value (other than salvage value) only to the purchaser and has use or value only for the specific purpose for which such items is produced by the seller for the purchaser, the seller is engaged primarily in a service occupation rather than in the business of selling tangible personal property and does not incur Retailers' Occupation Tax liability."

Section 3(d) of the Use Tax Act (Ill. Rev. Stat. 1957, chap. 120, par. 439.3(d),) further provides that no use tax is to be imposed if the seller would not be liable under the Retailers' Occupation Tax Act had all elements of sale occurred in Illinois. Plaintiff contends that the instant transactions meet the requirements for exemption as a service occupation, whereas defendant views them as primarily sales of tangible personal property.

Certain standards have been formulated to determine when a vendor is engaged in the business of selling at retail. If the article sold has no value to the purchaser except as a result of services rendered by the vendor, and the transfer of the article to the purchaser is an actual and necessary part of the service rendered, then the vendor is engaged in the business of rendering service and not selling at retail. On the

other hand, if the article sold is the substance of the transaction and the service rendered is merely incidental thereto and an inseparable part of the transfer to the purchaser of the article sold, then the vendor is engaged in retail selling. *Kellogg Switchboard and Supply Corp.* v. *Department of Revenue*, 14 Ill.2d 434; *Sterling Steel Casting Co.* v. *Department of Revenue*, 7 Ill.2d 244; *Snite* v. *Department of Revenue*, 398 Ill. 41.

In the present case plaintiff did not hold itself out as a mere vendor of bakery equipment, but to the contrary it advertised as a specialist in bakery engineering. Every conveyor system was constructed upon special order and only after preliminary drawings and detailed plans had been formulated and prepared for each integral part by qualified engineers over a period of many months. It appears that a specially designed bakery conveyor system is an intricate combination of various mechanical devices and equipment which are designed to work harmoniously in transporting the products through the entire baking process carried on at various points throughout the plant. No two systems are identical, and although the motors could possibly be reset for a different operation, the engineering work involved in coordinating this equipment would be applicable only to the installation for which it was planned. The uncontroverted evidence presented indicates that the bakery equipment, when installed, had value, other than salvage, only to the purchaser for the specific purpose for which it was designed, and that the Planet Corporation machine was useless for any purpose other than manufacturing the specific parts which plaintiff requires in its somewhat unique operation.

Under these circumstances the findings of the Department were manifestly contrary to the weight of the evidence. The various bakeries, in contacting plaintiff, were not interested in purchasing motors, belts, switches, and other conveyor mechanisms but were concerned with engag-

ing plaintiffs' skill in devising a means for the moving of its products throughout its existing plant facilities. Likewise, in its dealing with Planet Corporation, plaintiff did not purchase a machine, but to the contrary it engaged Planet to design and construct a particular piece of equipment to do a special job for a highly specialized purpose. In this respect the present facts are not unlike those presented in *Ingersoll Milling Machine Co.* v. *Department of Revenue,* 405 Ill. 367, where a special machine for the milling of engine blocks had been constructed for Caterpillar Tractor Co.; in *Bucyrus-Erie Co.* v. *Lorenz,* 26 Ill.2d 183, which involved the building of a huge strip mine excavator upon special order; and in *American Brake Shoe Co.* v. *Department of Revenue,* 25 Ill.2d 354, where railroad forks, switch points, switches, guardrails, crossings, and similar railroad trackage were designed and manufactured to meet the unique requirements of each particular location. In all of these instances we concluded that the vendor was primarily employed for its engineering skill and was not subject to retailers' occupation tax. Contrary to defendant's assertions, *Kellogg Switchboard and Supply Corp.* v. *Department of Revenue,* 14 Ill.2d 434, involving the sale of switchboards which were not special order and which were comprised of standard parts that could be interchanged in other switchboards, and *Sterling Steel Casting Co.* v. *Department of Revenue,* 7 Ill.2d 244, which involved the production and sale of inexpensive steel castings requiring no engineering skill upon vendor's part, are not in point. Accordingly, we hold that in the instances involved here plaintiff was principally engaged in a service occupation and, except for the admitted liability of $516.23 arising from different transactions, was not subject to retailers' occupation or use taxes.

The judgment of the circuit court of Cook County is, therefore, affirmed.

*Judgment affirmed.*