COLORCRAFT CORPORATION, Plaintiff-Appellee, v. THE DEPART-
MENT OF REVENUE, Defendant-Appellant.

Fourth District   No. 4—84—0781

Opinion filed August 27, 1985.

Neil F. Hartigan, Attorney General, of Springfield (Jill Wine-Banks, Solicitor General, and Imelda R. Terrazino, Assistant Attorney General, both of Chicago, of counsel), for appellant.

David Duez, of McDermott, Will & Emery, of Springfield, and Philip M. Moilanen, of Stanton, Bullen, Nelson, Moilanen & Klaasen, P.C., of Jackson, Michigan, for appellee.

JUSTICE WEBBER delivered the opinion of the court:

Plaintiff-taxpayer filed a complaint for administrative review in the circuit court of Sangamon County challenging a ruling of the defendant, Illinois Department of Revenue (Department), that plaintiff was not entitled to claimed use tax exemptions. The Department's ruling was based upon a finding that plaintiff's photofinishing business was a service occupation and plaintiff was not engaged in manufacturing such that machinery purchased by plaintiff qualified for the use tax exemptions sought. On review, the trial court found the Department's decision to be against the manifest weight of the evidence and ordered the final assessments of the Department set aside; the Department appeals.

Plaintiff is a North Carolina corporation licensed to do business in the State of Illinois and is engaged primarily in the business of photofinishing. In 1980 plaintiff purchased the two pieces of equipment in dispute for use in its photofinishing operations: an automatic color printer and a photographic paper processor. This machinery was installed in plaintiff's Jacksonville, Illinois, photofinishing plant.

Plaintiff filed exemption certificates with the Department, claiming a use tax exemption for 31.25% of the cost of the equipment pursuant to section 3 of the Use Tax Act (Ill. Rev. Stat. 1983, ch. 120, par. 439.3). A subsequent audit by the Department resulted in the disallowance of the claimed exemptions and the issuance of a notice of tax liability for the use tax deficiency.

Plaintiff then filed a protest with the Department and requested a hearing on the matter. Following the administrative hearing, the Department hearing officer entered findings of fact and law and recommended that the claimed exemptions be denied. The Department adopted that recommendation and issued a final assessment of tax deficiency in the amount of $4,130.83. This action ensued with the results described above.

The facts of this case, adduced at the administrative hearing, are essentially undisputed. Plaintiff offers its photofinishing services to approximately 675 retail dealers throughout the central Illinois area, such as drugstores, supermarkets, camera stores, etc. Plaintiff picks up the customers' film at the dealer's location, does the photofinishing at its Jacksonville plant, and delivers the processed film to the dealer within a 24- or 48-hour period. In 1980 plaintiff processed over 1,000,000 rolls of film and produced nearly 30,000,000 photographic prints.

When film reaches the plaintiff's plant, it is first sorted by film size and type. The film is then spliced onto 200-foot reels of like film after having been marked with an identification imprint. The first step in the actual photofinishing process is the production of color negatives by the film processor in which the exposed film is treated in a solution known as a developer.

After the negatives are produced they are run through an automatic printer (such as the one in dispute) at speeds of up to 10,000 prints per hour. At the same time, unexposed photographic paper is fed through the machine and light passes through the negatives, exposing the paper to the images on each negative.

Following exposure in the printer, the photographic paper is processed using a machine such as the second one involved in this case. The paper is fed through the paper processor which treats the paper with various chemical solutions. The paper and negatives are then run through a cutting machine, and the color prints are reunited with the corresponding negatives. The prints are then inspected and packaged for delivery to the dealer.

The raw materials used in photofinishing include the sensitized photographic paper and the various chemicals and dyes used in developing and processing the customer's film. Many of the chemicals and the paper itself are transferred to the ultimate consumer as part of the finished product. Of the total price charged to plaintiff's dealers, 28% represents the cost of materials and 16% represents the cost of labor.

Photofinishing is essentially an automated process, and there is no engineering or design work involved. There is no individualized piecework, such as tinting, coloring, or retouching of pictures or negatives. Plaintiff's employees perform routine labor tasks, such as loading and operating the machines.

At the administrative hearing the Department presented its *prima facie* case for the tax deficiency by presenting its records of the audit performed by a Department employee. The Department did

not present evidence designed to rebut the plaintiff's assertion that photofinishing is primarily a manufacturing process and not a service-oriented business.

Following the administrative hearing, the hearing officer entered his recommendation that the use tax exemption claimed by plaintiff for the photographic printer and the paper processor be denied. This recommendation was based upon the hearing officer's factual finding that:

> "[Plaintiff's photofinishing] process entails the normal functions of developing film and preparing either a slide or print therefrom. The basic difference, I find, between the way Taxpayer performs these functions and a small volume serviceman photoprocessor performs these functions is the fact that due to the volume of Taxpayer business Taxpayer does it at very high speed and in great volume. I therefore find that Taxpayer is a subcontractor-serviceman as that term is used in *86 Illinois Administrative Code* Chapter I, Section 140.145."

The exemption from use tax claimed by plaintiff is contained in section 3 of the Use Tax Act (Ill. Rev. Stat. 1983, ch. 120, par. 439.3), which provides in pertinent part:

> "The tax imposed by this Act does not apply to the use of machinery and equipment primarily in the process of the manufacturing or assemblying [*sic*] of tangible personal property for wholesale or retail sale."

Section 3 of the Use Tax Act defines "manufacturing process" as:

> "the production of any article of tangible personal property, whether such article is a finished product or an article for use in the process of manufacturing or assembling a different article of tangible personal property, by procedures commonly regarded as manufacturing, processing, fabricating, or refining which changes some existing material or materials into a material with a different form, use or name. In relation to a recognized integrated business composed of a series of operations which collectively constitute manufacturing, or individually constitute manufacturing operations, the manufacturing process shall be deemed to commence with the first operation or stage of production in the series, and shall not be deemed to end until the completion of the final product in the last operation or stage of production in the series."

Further, "assembling process" is defined in section 3 as:

> "the production of any article of tangible personal property, whether such article is a finished product or an article for use

in the process of manufacturing or assembling a different article of tangible personal property, by the combination of existing materials in a manner commonly regarded as assembling which results in a material of a different form, use or name."

It is plaintiff's position that as a factual matter, it is engaged in the manufacturing or assembling of tangible personal property such that the section 3 exemption is applicable to the purchase of the machines in question. The evidence at the administrative hearing established that plaintiff's photofinishing business does not involve personal service, skill, or artistic ability, but is rather a thoroughly mechanized and automated process similar to a factory assembly line. Plaintiff contends that photofinishing is in essence the creation of a product and is commonly viewed as a manufacturing process both by the industry and the general public.

The Department relies exclusively upon its own administrative regulations in defending its decision to deny plaintiff the claimed use tax exemption. These regulations, promulgated pursuant to the Retailers' Occupation Tax Act (Ill. Rev. Stat. 1983, ch. 120, par. 440 *et seq.*) and the Service Occupation Tax Act (Ill. Rev. Stat. 1983, ch. 120, par. 439.101 *et seq.*) expressly provide that persons engaged in the business of photofinishing are taxable as service providers rather than as manufacturers.

For instance, one such regulation specifically exempts photofinishers from the retailers' occupation tax:

"c) Persons Engaged in the Graphic Arts—When Not Liable for Tax

1) A photographer who is employed to take a picture for his customer, or a *person who is employed to do photofinishing work for his customer*, or a photostater who is employed to reproduce material for his customer by the photostating process, or a printer who is employed to print material for his customer in accordance with copy supplied to the printer by the customer or otherwise in accordance with the customer's specifications and special order, or a person who otherwise engages primarily in the transaction in furnishing graphic arts' services is not engaged in such transaction in the business of selling tangible personal property within the meaning of the Act, if the item so produced does not serve substantially the same function as stock or standard items of tangible personal property that are sold at retail, but is engaged in such transaction primarily in a service occupation." (Emphasis added.) 86 Ill. Admin. Code sec. 130.2000.

Thus, under the Department's regulations, plaintiff is not liable for the retailers' occupation tax as a person engaged in the graphic arts or related occupations. Plaintiff is rather taxed as a graphic arts serviceman under the Service Occupation Tax Act. See 86 Ill. Admin. Code sec. 130.2000(f).

As noted by the Department, the classification of photofinishing as a service occupation originated as the result of a line of Illinois Supreme Court decisions from the 1930's which held that persons engaged in the graphic arts were not sellers of tangible personal property and thus not liable for the retailers' occupation tax. In *J.A. Burgess Co. v. Ames* (1935), 359 Ill. 427, 194 N.E. 565, joint suit was brought by plaintiffs engaged in the businesses of blueprinting, photostating, and commercial photography to enjoin the Department of Revenue from collecting the retailers' occupation tax. The court held that the blueprinters and photostaters were not subject to the tax since they engaged primarily in the provision of services through the use of devices which reproduced images furnished by the customer on sensitized paper which was thereby destroyed and of no subsequent value to anyone but the customer. The court stated:

"We can perceive no logical difference between the paper upon which a photostatic copy of something is made or a blue-print produced, and that paper which a lawyer uses for writing a will or deed, a doctor for writing a prescription, or an abstracter for showing a chain of title. The paper is a mere incident; the skilled service is that which is required." 359 Ill. 427, 429, 194 N.E. 565, 566.

In *H.G. Adair Printing Co. v. Ames* (1936), 364 Ill. 342, 4 N.E.2d 481, the court held that commercial printers were not liable for the retailers' occupation tax. The court found that the printing process destroyed whatever commercial value the plain paper had, and the resulting printed matter, such as letterheads, circulars, and attorney's briefs, had value only to the customer, who provided the copy. Consequently, such printers were engaged only in the provision of a "graphic arts" service. Similarly, in *A.B.C. Electrotype Co. v. Ames* (1936), 364 Ill. 360, 4 N.E.2d 476, the court held that persons engaged in producing electrotypes, stereotypes, and matrices, used by printers and others in making precise reproductions, were not liable for retailers' occupation tax. Again, the small quantity of tangible material used, which represented from 5 to 12% of the price charged to the customer, was practically destroyed for use by anyone other than the customer supplying the original. "What the customer really pays for is the skill, labor and use of the machinery and equipment of the

electrotyper. The electrotyper is engaged in the business of furnishing that skill and labor and the use of that machinery—not in the sale of tangible personal property at retail." 364 Ill. 360, 361, 4 N.E.2d at 476.

■■ The standard distilled from the above cases and others involving the question of whether a given business or industry is a service or retail occupation is as follows:

> " 'If the article sold has no value to the purchaser except as a result of services rendered by the vendor and the transfer of the article to the purchaser is an actual and necessary part of the service rendered, then the vendor is engaged in the business of rendering service and not in the business of selling at retail. If the article sold is the substance of the transaction and the service rendered is merely incidental to and an inseparable part of the transfer to the purchaser of the article sold, then the vendor is engaged in the business of selling at retail.' "
> (*Spagat v. Mahin* (1971), 50 Ill. 2d 183, 189, 277 N.E.2d 834, 837-38 (quoting *Velten & Pulver, Inc. v. Department of Revenue* (1963), 29 Ill. 2d 524, 529, 194 N.E.2d 253, 256).)

In *Spagat*, the court found that the business of selling and installing custom wall-to-wall carpeting was a retail occupation because the carpeting itself was the substance of the transaction and the installation services were merely incidental to and an inseparable part of the transaction.

More recently, in *First National Bank v. Department of Revenue* (1981), 85 Ill. 2d 84, 421 N.E.2d 175, the court held that computer software programs were intangible property not subject to the use tax. The court found that the essence of the transaction involved was the service of creating the programs; the mere transfer of the magnetic tapes in question was incidental.

■ Factors relevant to the determination of whether a given business is a retail or service occupation include: (1) the ratio between the bare cost of materials and the ultimate price; (2) the buyer's motive for selecting the particular seller, *i.e.*, whether the seller has some particular expertise; (3) whether the item sold is a unique or "special order" item versus a merely standard item or repeat order. *J.H. Walters & Co. v. Department of Revenue* (1969), 44 Ill. 2d 95, 254 N.E.2d 485.

■■ ■ Applying the above principles to the instant case, we find that the facts adduced at the administrative hearing compel the factual conclusion that plaintiff is engaged in the manufacture of tangible personal property for wholesale or retail. The articles sold, finished

photographs, are the substance of the transaction, and any service performed by plaintiff is merely incidental to the ultimate sale. Of the price charged to the dealer, 28% represents the cost of materials and only 16% the cost of labor. The actual labor involved consists mainly of routine labor tasks, such as loading the machines and supervising their operation. There are no particular artistic or design skills brought to bear in the production process, and no individualized piecework is involved. A customer does not select plaintiff based upon any special expertise possessed by plaintiff; surveys described at the administrative hearing have shown that the consumer is motivated primarily by price; quality of the photographs and the speed with which the photographs are returned to the dealer are secondary considerations. Finally, while each print may be considered unique in the sense that the photographic image is unique, the image is actually irrelevant to the production process.

We recognize that the Department has been granted the authority to promulgate such reasonable rules and regulations to enforce the Use Tax Act as are deemed expedient (see Ill. Rev. Stat. 1983, ch. 120, pars. 439.12, 451). In general, an administrative agency must be given wide latitude in determining what actions are "reasonably necessary" and a court should not set aside agency policy merely because that policy is deemed unwise or inappropriate. (*Oak Liquors, Inc. v. Zagel* (1980), 90 Ill. App. 3d 379, 413 N.E.2d 56.) Rules and regulations promulgated pursuant to legislative authority should be set aside only when they are clearly arbitrary, capricious or unreasonable. *Acker v. Department of Revenue* (1983), 116 Ill. App. 3d 1080, 452 N.E.2d 798.

We do not consider that the above principles require us to abdicate our role as a court of review. Thus, "the judicial deference that is rightly given to administrative agencies on questions of fact and on matters of policy within their province does not relieve this court of its ultimate responsibility of determining whether or not, as a matter of law, the occupation of plaintiff is within the purview of the taxing statute." *American Brake Shoe Co. v. Department of Revenue* (1962), 25 Ill. 2d 354, 361, 185 N.E.2d 192, 196.

In this connection, we find that the factual findings of the hearing officer, quoted above and adopted by the Department, simply do not support the conclusion that plaintiff is engaged in a service occupation and consequently not eligible for the claimed use tax exemption. The fact that plaintiff's photofinishing operations are performed at high speed and in great volume would, if anything, militate for classification as a manufacturer of tangible goods. See *Sterling Steel Casting*

*Co. v. Department of Revenue* (1955), 7 Ill. 2d 244, 130 N.E.2d 262.

We note that our decision is not without precedent in other jurisdictions. For instance, in *Commonwealth v. Perfect Photo, Inc.* (1977), 29 Pa. Commw. 316, 371 A.2d 580, the court held that the business of photofinishing fell within the classification of "manufacturing" in Pennsylvania's capital stock tax provisions and thus equipment used in photofinishing was exempt from such taxation. While the statutory taxation scheme differs significantly from that in Illinois, we find the *Perfect Photo* decision instructive for its recognition of the drastic changes in the photofinishing industry which have occurred since the original determination that photofinishing was not manufacturing. Further, while we do not regard such as persuasive authority, our attention has been called to administrative rulings in other jurisdictions to the same effect as the *Perfect Photo* decision.

The record before us also evidences the fundamental change which has taken place in the photofinishing industry since the Department originally classified photofinishing as a service occupation. This classification may have had some basis in fact in the days when small entrepreneurs possessed of special expertise developed each print individually in small darkrooms. The classification has become obsolete, however, in light of the complete mechanization and automation which now characterizes the industry.

We hold only that the Department's classification of photofinishing as a service occupation is unreasonable and that plaintiff is consequently entitled to the use tax exemption for machinery and equipment used primarily in the manufacturing of tangible personal property. Our decision obviously does not affect other persons engaged in the graphic arts.

For the foregoing reasons, we affirm the judgment of the circuit court which ordered the final assessments of the Department set aside.

Affirmed.

GREEN, P.J., and MORTHLAND, J., concur.