H.D., LTD., Plaintiff-Appellant, v. THE DEPARTMENT OF REVENUE, Defendant-Appellee.

Second District   No. 2—97—0478

Opinion filed June 1, 1998.

Patrick B. Mathis and Iris Miranda-Kirschner, both of Mathis, Marifian, Richter & Grandy, Ltd., of Belleville, for appellant.

James E. Ryan, Attorney General, of Chicago (Barbara A. Preiner, Solicitor General, and Erik G. Light, Assistant Attorney General, of counsel), for appellee.

JUSTICE DOYLE delivered the opinion of the court:

Plaintiff, H.D., Ltd., appeals from an order of the circuit court of Lake County in an administrative review action. The order affirmed a decision of the Illinois Department of Revenue (Department) that plaintiff owed retailer's occupation tax (ROT) deficiencies and entered judgment assessing plaintiff $65,854.66 for ROT deficiencies, interest, and penalties.

Plaintiff raises the following issues on appeal: (1) whether the circuit court erred when it denied plaintiff's motion for a default judgment and allowed the Department to enter its appearance and file its

answer after the statutorily required time for doing so had expired; and (2) whether the Department's decision that plaintiff owed ROT deficiencies was against the manifest weight of the evidence and contrary to law because the Department erred when it determined that the ROT applied to plaintiff's activities.

The Department conducted an audit of plaintiff's ROT payments for the period from July 1988 through June 1992. Based on the audit, the Department issued a notice of tax liability assessing $122,380 against plaintiff for tax deficiencies, interest, and penalties.

Plaintiff protested the notice of tax liability, and the Department conducted a hearing on the matter. At the hearing, the parties made three stipulations. The parties first stipulated to the amounts of plaintiff's purchases of goods for retail sales for each of the periods in question. The parties next stipulated to a total amount for unreported receipts by plaintiff during the audit period and the calculation and categorization of these unreported receipts on a monthly basis as either retail sales or some other category. Finally, the parties stipulated that the amounts shown on certain schedules were correct allocations of plaintiff's total gross sales and that these amounts would be adjusted to account for unreported income.

The Department then presented its *prima facie* case. The Department's *prima facie* case consisted of a six-page document entitled "Correction and/or Determination of Tax Due" showing the amount of tax deficiencies and penalties that plaintiff allegedly owed for the audit period.

At the hearing, Karen Tennill, a Department auditor who conducted the audit of plaintiff's ROT payments, and Tennill's supervisor, John Cooper, testified for the Department. Tennill was also called by plaintiff to testify.

In summary, the pertinent testimony of Cooper and Tennill was as follows: the audit was based on plaintiff's sales invoices that were provided to Tennill by plaintiff's bookkeeper and accountant; the invoices showed that plaintiff was engaged in various activities including exterior landscaping, the rental of plants, and the sale of plants and related materials for indoor use by purchasers; the tax deficiencies calculated by the Department involved only the portion of plaintiff's business relating to the sale of plants and related material for indoor use by the purchasers; plaintiff's invoices for these sales generally showed a single rate for the sale, *i.e.*, the invoices did not separate out things such as maintenance or service agreements; if a sales invoice did show a separate maintenance agreement, the Department determined that the ROT did not apply to that part of the invoice; an audit narrative completed by Tennill showed that plaintiff claimed to

be a "serviceman"; however, the narrative also showed that plaintiff reported sales shown on the invoices as subject to the ROT; and the Department levied penalties for fraud against plaintiff because one of plaintiff's attorneys submitted an altered set of invoices that attempted to specify the cost of goods sold on the invoices.

Fritz Peltonen testified for plaintiff. Peltonen's testimony included the following: he is a space and occupancy planner currently employed by Citibank; he has purchased goods and services for indoor use from plaintiff for about 10 years; when making these purchases from plaintiff, he relies on plaintiff to design, install, and maintain plant arrangements in various spaces inside buildings owned or occupied by Citibank; he uses plaintiff to do this primarily for the service plaintiff provides; and the services provided by plaintiff include regularly watering and inspecting the plants in the arrangements and replacing plants if necessary.

Jon Crim also testified for plaintiff. Crim's testimony included the following: he is plaintiff's president and sole stock owner; he considers himself to be an interior and exterior landscape contractor; at one time, plaintiff paid taxes on the entire invoice amount for its indoor landscaping activities, but, on the advice of an accountant, plaintiff later began to pay taxes only on the cost price of the goods it sold when engaged in these activities; with respect to the sales of interior plant arrangements, plaintiff designs, delivers, and installs the plants and then services and maintains the plants; Crim believes that customers who hire plaintiff for indoor landscaping activities do so primarily for the services plaintiff provides because, if the customers just wanted plants, they could purchase them cheaper elsewhere; plaintiff did not intend to deceive the Department by adding the cost of goods to its invoices; and the altered invoices were intended only to clarify what plaintiff was doing.

Following the hearing, the administrative law judge who conducted the hearing issued a recommended disposition. The recommended disposition stated that the first issue to be decided was whether plaintiff, when it was engaging in indoor landscaping activities, was engaged in retail sales and therefore was subject to the ROT or whether plaintiff was engaged in a service occupation and therefore was subject to the service occupation tax (SOT) rather than the ROT. A second issue identified by the administrative law judge was whether the Department erred when it imposed fraud penalties on plaintiff. The recommended disposition resolved these issues by determining that the Department correctly decided that plaintiff was subject to the ROT but that the Department erred when it imposed fraud penalties on plaintiff.

The Department subsequently accepted the administrative law judge's recommended disposition, and it became the Department's final administrative decision. On December 12, 1995, the Department issued a final assessment against plaintiff indicating that plaintiff owed a total of $107,665.99 in tax delinquencies, penalties, and interest. The Department subsequently issued a corrected final assessment with the same effective date. The corrected final assessment showed that plaintiff owed a total of $61,857 in tax delinquencies, penalties, and interest through December 12, 1995.

Plaintiff filed its complaint for administrative review on January 16, 1996. On March 26, 1997, the circuit court issued a ruling on the matter. In its remarks, the court noted that the Department based its decision on plaintiff's invoices. Where services were indicated on the invoices the Department determined that they would be subject to the SOT, but where services were not specified on the invoices the Department determined that the amounts shown were subject to the ROT.

The court noted that plaintiff claimed that it was a service-oriented business and therefore not subject to the ROT. However, the court concluded that plaintiff's invoices showing that there was a retail component to plaintiff's business were undisputed and the Department correctly had determined that the invoices showing such retail sales that did not specify separate service charges were subject to the ROT for the entire amount shown on the invoice.

In a written order entered on the same day as the hearing, March 26, 1997, the court found that the Department's decision was neither against the manifest weight of the evidence nor contrary to law. The order entered judgment against plaintiff in the amount of $61,857 and noted that interest had continued to accrue.

On April 23, 1997, the circuit court entered an amended judgment order. The amended order entered judgment against plaintiff in the amount of $65,854.66 for tax deficiencies, penalties, and interest through March 26, 1997. The order stated that it was *nunc pro tunc* to March 26, 1997. On April 24, 1997, plaintiff filed its notice of appeal.

The first issue that plaintiff raises on appeal is whether the trial court erred when it permitted defendant to enter its appearance and file its answer more than five months after summons was served on defendant. Plaintiff caused summons to be served on defendant on January 16, 1996, the same day that plaintiff filed its complaint. On April 15, 1996, after defendant had neither appeared nor filed an answer, plaintiff moved for a default judgment against defendant. On June 11, 1996, the trial court entered an order that gave defendant 21 days to file an appearance or otherwise plead. On June 20, 1996, the Illinois Attorney General entered defendant's appearance. On June 21, 1996, the administrative record was filed as defendant's answer.

Plaintiff contends that the Administrative Review Law (Review Law) (735 ILCS 5/3—101 *et seq.* (West 1992)) in conjunction with Supreme Court Rule 291 (134 Ill. 2d R. 291) required defendant to answer or otherwise appear no later than 35 days after it was served with summons. Plaintiff asserts that the trial court did not have the authority to extend the time for plaintiff to answer or appear beyond 35 days. Plaintiff argues that the trial court's order allowing defendant to appear and answer more than 35 days after the summons was served on defendant was therefore erroneous.

■ Plaintiff correctly notes that the Review Law mandates that "[e]very appearance shall be filed within the time fixed by rule of the Supreme Court." 735 ILCS 5/3—106 (West 1996). Plaintiff also correctly notes that Supreme Court Rule 291(c) requires appearances in administrative review proceedings "not later than 35 days after the date the summons bears." 134 Ill. 2d R. 291(c). However, plaintiff fails to note that Rule 291 also provides that other supreme court rules, including Rule 183, shall apply to administrative review proceedings. Supreme Court Rule 183 provides that "[t]his court, for good cause shown on motion after notice to the opposite party, may extend the time for filing any pleading or the doing of any act which is required by the rules to be done within a limited period, either before or after the expiration of the time." 134 Ill. 2d R. 183.

Thus, contrary to plaintiff's assertions, the Review Law, through the supreme court rules it references, plainly gives a circuit court the power to extend the time for filing an appearance or answer. Moreover, a decision regarding such an extension rests within the trial court's discretion, and a reviewing court will not reverse the trial court's decision absent an abuse of that discretion. *Straub v. Zollar*, 278 Ill. App. 3d 556, 563 (1996).

In this case, plaintiff does not contend that the trial court abused its discretion when it decided to extend the time for defendant to file an appearance. Rather, plaintiff contends that the trial court did not have the power to grant such an extension.

■ A default judgment is a drastic measure that should not be encouraged and should be employed with great caution only as a last resort. *Biscan v. Village of Melrose Park Board of Fire & Police Commissioners*, 277 Ill. App. 3d 844, 848 (1996). The overriding consideration in deciding whether to enter or vacate a default judgment is the achievement of substantial justice. *Biscan*, 277 Ill. App. 3d at 848. Reversing the ruling of an administrative agency without any review by allowing a motion for a default judgment generally does not achieve substantial justice. *Biscan*, 277 Ill. App. 3d at 848.

Here, plaintiff has not shown that the trial court abused its discre-

tion when it denied plaintiff's motion for a default judgment. Absent such a showing, substantial justice would not be achieved by reversing the trial court's decision to deny the motion. Accordingly, plaintiff's contention that the trial court committed reversible error when it denied plaintiff's motion for default judgment fails.

Plaintiff next contends that the Department's decision that plaintiff owed ROT deficiencies for its interior landscaping activities was erroneous because when it was engaged in those activities plaintiff was subject to an SOT under the Service Occupation Tax Act (SOT Act) (35 ILCS 115/1 *et seq.* (West 1992)) rather than an ROT under the Retailers' Occupation Tax Act (ROT Act) (35 ILCS 120/1 *et seq.* (West 1992)). In support of its position, plaintiff asserts that when it engaged in interior landscaping activities it was a "serviceman" engaged in a service occupation. Plaintiff maintains that it has established that it was engaged in a service occupation by showing that it primarily provided services to its interior landscaping clients and that any related sales of tangible personal property to these clients were incidental to the services it provided.

■ We first note the standard of review for this administrative review proceeding. Section 12 of the ROT Act provides that judicial review of the Department's decisions regarding the ROT be in accordance with the Review Law. 35 ILCS 120/12 (West 1992). The Review Law provides that our review extends to all questions of law and fact presented by the entire record. Under the Review Law, our review is limited to the record before us; we may not hear new or additional evidence. The Review Law mandates that the "findings and conclusions of the administrative agency on questions of fact shall be held to be prima facie true and correct." 735 ILCS 5/3—110 (West 1996).

■ A court's function in administrative review proceedings is to ascertain whether the findings and decisions of the agency are against the manifest weight of the evidence. An administrative decision is against the manifest weight of the evidence only if the opposite conclusion is clearly evident. The mere fact that an opposite conclusion is reasonable or that the reviewing court might have ruled differently does not justify reversal of the administrative findings. If the record contains evidence to support the agency's decision, the reviewing court should affirm the decision. *Abrahamson v. Illinois Department of Professional Regulation*, 153 Ill. 2d 76, 88 (1992).

■ The ROT Act imposes a tax (the ROT) on persons, including public or private corporations, engaged in the occupation of selling tangible personal property at retail. See 35 ILCS 120/2 (West 1992). The ROT Act defines a sale at retail as "any transfer of the ownership of or title to tangible personal property to a purchaser, for the purpose

of use or consumption, and not for the purpose of resale." 35 ILCS 120/1 (West 1992). Although the ROT is imposed on the occupation, it is calculated on the taxpayer's gross retail receipts. *Soho Club, Inc. v. Department of Revenue*, 269 Ill. App. 3d 220, 228-29 (1995).

■ The SOT Act imposes a tax (the SOT) "upon all persons engaged in the business of making sales of service (referred to as 'servicemen') on all tangible personal property transferred as an incident of a sale of service." 35 ILCS 115/3 (West 1992). The SOT Act generally defines a "sale of service" as "any transaction except" the sale of tangible personal property taxable under the ROT Act or the Use Tax Act (35 ILCS 105/1 *et seq.* (West 1992)). 35 ILCS 115/2 (West 1992).

■ As a general rule, the ROT applies to all sales at retail unless the taxpayer produces evidence in the form of books and records to establish nontaxability. *Mel-Park Drugs, Inc. v. Department of Revenue*, 218 Ill. App. 3d 203, 217 (1991). Under the ROT Act, persons who sell at retail and who also engage in "other activities (including, but not limited to, engaging in a service occupation)" must "keep such additional records and books of all such activities as will accurately reflect the character and scope of such activities and the amount of receipts realized therefrom." 35 ILCS 120/7 (West 1992). However, if a sale of service includes a relatively insignificant or incidental transfer of tangible personal property, then an SOT should be assessed rather than an ROT. *Soho Club, Inc.*, 269 Ill. App. 3d at 229. The tax system is structured so that only one occupation tax is imposed on a particular item of commerce. *Soho Club, Inc.*, 269 Ill. App. 3d at 229.

■ As our supreme court has noted, the distinction between occupations taxable under the ROT Act and the SOT Act is often elusive and difficult to determine. *J.H. Walters & Co. v. Department of Revenue*, 44 Ill. 2d 95, 101 (1969). The court set out the standard for making that determination when it stated:

> " 'If the article sold has no value to the purchaser except as a result of services rendered by the vendor and the transfer of the article to the purchaser is an actual and necessary part of the service rendered, then the vendor is engaged in the business of rendering service and not in the business of selling at retail. If the article sold is the substance of the transaction and the service rendered is merely incidental to and an inseparable part of the transfer to the purchaser of the article sold, then the vendor is engaged in the business of selling at retail.' *Velten & Pulver, Inc. v. Department of Revenue*, 29 Ill. 2d 524, 529[-30] [(1963)]; *Dow Chemical Co. v. Department of Revenue*, 26 Ill. 2d 283, 285 [(1962)]; *Kellogg Switchboard & Supply Corp. v. Department of Revenue*, 14 Ill. 2d 434, 437[-38] [(1958)]." *Spagat v. Mahin*, 50 Ill. 2d 183, 189 (1971).

■ A reviewing court has the responsibility of making the determination, as a matter of law, whether an occupation is within the purview of a taxing statute. *American Brake Shoe Co. v. Department of Revenue*, 25 Ill. 2d 354, 361 (1962). Courts have used various factors in making this determination. See, *e.g., Colorcraft Corp. v. Department of Revenue*, 112 Ill. 2d 473, 483 (1986) (consolidating factors used in several cases). However, each determination ultimately rests on its own facts. *Automatic Voting Machine Corp. v. Daley*, 409 Ill. 438, 447 (1951).

■ In this case, we conclude that plaintiff has not carried its burden of overcoming the Department's *prima facie* case that plaintiff made retail sales subject to the ROT when it engaged in indoor landscaping activities. We recognize that plaintiff presented evidence tending to show that plaintiff's clients employed plaintiff to provide interior landscaping at least in part because of the services plaintiff provided in conjunction with the sale of the plants and related materials involved in the interior landscaping. However, plaintiff failed to show that the tangible property it sold to its customers, the plants and related material, had no value to the customers except as a result of the services plaintiff rendered. Rather, we believe that the sale of the plants and related material was a major part of the substance of the transactions that constituted plaintiff's indoor landscaping activities. Plaintiff failed to show that the sale of the plants was merely an insignificant or incidental part of the transactions.

In addition, plaintiff failed to provide records and books for its interior landscaping activities that would allow the Department to determine the character and scope of the activities as required by section 7 of the ROT Act (35 ILCS 120/7 (West 1992)). Section 7 plainly requires a taxpayer, such as plaintiff, who sells at retail and also engages in other activities, including a service occupation, to provide sufficient records to reflect the character and scope of the activities. 35 ILCS 120/7 (West 1992). Here, many of plaintiff's invoices showed only a single amount for interior landscaping activities and did not separate out the purported service or maintenance activities. These invoices therefore did not satisfy the statutory requirements for record keeping. In view of these inadequate records, the Department could not determine how much, if any, of the invoice amount reflected retail sales and how much reflected other activities. The Department therefore correctly determined that the entire amount shown on these invoices was subject to the ROT.

For all these reasons, we cannot say that the trial court's affirmation of the Department's decision was against the manifest weight of the evidence or contrary to law. Based on the foregoing, the decision of

the circuit court of Lake County affirming the Department's decision is affirmed.

Affirmed.

COLWELL and RATHJE, JJ., concur.