2024 IL App (1st) 231163-U

SECOND DIVISION
September 30, 2024

Nos. 1-23-1163 and 1-23-1177, Consolidated

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | |
|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, ex rel. RICHARD LINDBLOM and RALPH LINDBLOM, | Appeal from the Circuit Court of Cook County. |
| Plaintiffs-Appellants/Cross-Appellees, | |
| v. | |
| | No. 15 L 50776 |
| SEARS BRANDS, LLC, HOME DEPOT U.S.A., INC., LOWE'S HOME CENTERS, LLC, BEST BUY STORES, L.P., and GREGG APPLIANCES, INC., | |
| Defendants, | |
| (Lowe's Home Centers, LLC, Defendant-Appellee/Cross-Appellant). | Honorable Catherine A. Schneider, Judge Presiding. |

JUSTICE HOWSE delivered the judgment of the court.
Justices McBride and Ellis concurred in the judgment.

ORDER

¶ 1   *Held*: We affirm in part and reverse in part the trial court's judgment finding the defendant liable for violating the Illinois False Claims Act. We find that the trial court erred in its calculation of damages; therefore, we remand for a new trial on the issue of damages.

¶ 2      Plaintiffs Richard and Ralph Lindblom, on behalf of the State of Illinois, filed this suit

against Lowe's, a company that operates numerous home improvement retail stores in Illinois.

The Lindbloms claim in their suit that from 2009 to 2015 Lowe's violated the Illinois False

Claims Act when it failed to collect and remit sales tax for sales of dishwashers and microwaves

purchased with installation services. Following a bench trial, the trial court agreed with the

Lindbloms and found that Lowe's knowingly avoided its obligation to collect and remit sales tax

to the State for the subject transactions. After finding Lowe's liable, the trial court held a

separate trial on damages and ultimately awarded the Lindbloms $4,148,887. The Lindbloms

appeal several of the trial court's rulings on damages. Lowe's cross-appeals challenging the trial

court's ruling on liability as well as one issue relating to damages. For the following reasons, we

affirm in part and reverse in part the trial court's judgment of liability, and we reverse and

remand for a new trial on the issue of damages and a recalculation of attorney fees.[1]

¶ 3                                        BACKGROUND

¶ 4      Plaintiffs Richard and Ralph Lindblom own and operate Advanced Appliance Service, a

retail appliance store located in Schaumburg. The Lindbloms' father opened Advance Appliance

Service in 1956. The Lindbloms' store is a direct competitor of Lowe's. The Lindbloms,

however, alleged that the competition between their store and Lowe's was unfair because the

Lindbloms at all times charged sales tax on the sale of dishwashers and microwaves, but Lowe's

was able to offer its customers lower prices because it was, according to the Lindbloms, illegally

not charging its customers sales tax.

---

[1] Lowe's filed a motion seeking leave to cite additional authority. We took the motion with the case. We now grant Lowe's motion; we have considered the additional authority cited therein and we have accorded it due weight.

2

¶ 5 In Illinois, retailers are required to collect and remit the State sales tax in the amount of 6.25% of gross receipts from sales of tangible personal property. 35 ILCS 120/2-10 (West 2022). In addition, retailers collect local sales tax which is added to the State sales tax. In Chicago, for example, retail sales of consumer goods are taxed at a rate of 10.25% which is made up of the 6.25% State sales tax and 4% of local sales taxes. Some sales of personal property are, however, exempt from the general sales tax and instead incur Illinois' use tax. Illinois imposes a use tax of 6.25% on either the selling price or the fair market value of the tangible personal property. 35 ILCS 105/3-10 (West 2022). "This use tax is intended to serve as a complement to the Retailers' Occupation Tax Act (35 ILCS 120/1 *et seq*. (West 2008)), which is the primary means by which Illinois taxes retail sales of tangible goods." *Shared Imaging, LLC v. Hamer*, 2017 IL App (1st) 152817, ¶ 24. "The purpose of the use tax is to preclude buyers from avoiding the retailers' occupation tax by making purchases from out-of-state vendors and to protect Illinois vendors from lost sales to those out-of-state vendors." *Id*. (citing *Irwin Industrial Tool Co. v. Department of Revenue*, 238 Ill. 2d 332, 340 (2010)).

¶ 6 Construction contractors do not need to collect sales tax when they incorporate tangible personal property into real estate under a construction contract. Instead, under Illinois law, the construction contractor himself is considered to be the end user of the product. Rather than the sales tax generally paid on the purchase of consumer goods, a construction contractor instead incurs the Illinois 6.25% use tax, which the contractor must pay to the State.

¶ 7 When a construction contractor sells and installs a water heater, furnace, roofing materials, or other materials and fixtures that are incorporated into the structure, the contractor *does not* incur sales tax liability but instead pays the State use tax. But when a construction

3

contractor sells and installs a refrigerator, washing machine, or other portable equipment, the contractor incurs state and local sales tax liability.

¶ 8      Lowe's claims it acted as a construction contractor in those instances where a customer purchased installation services from Lowe's for dishwashers and over-the-range microwaves. When Lowe's installs purchased appliances as part of its "contractor business" Lowe's paid the use tax to the State but did not collect and remit sales tax. Lowe's concluded when it supplied and installed built-in dishwashers and over-the-range microwaves it was only required to pay use tax because it was acting as a construction contractor rather than a retailer in those instances.

¶ 9      Conversely, when Lowe's sells a dishwasher or microwave to a customer who takes the appliance from the store at the time of purchase or has it delivered, Lowe's collected the State and local sales tax and remitted the collected tax to the State.

¶ 10     The issue presented in this case is whether Lowe's was required to collect sales tax on the dishwashers and microwave ovens it sold when the customer also paid for installation of the appliances from Lowe's.

¶ 11     According to the record, the Lindbloms specifically informed the Illinois Department of Revenue about Lowe's tax practices in February 2015. The Lindbloms explained in an email to a representative from the Department of Revenue that, for approximately 30 years, non-party Sears has been telling its customers that it does not have to charge sales tax on the sale of a built-in dishwasher if the customer also orders installation. The Lindbloms informed the Department that Home Depot and Lowe's were engaged in the same practice and were obtaining an unfair competitive advantage. The Lindbloms stated that their own accountant advised them against adopting the same tax practice. The Lindbloms explained that, for the past 10 years, Lowe's has had an unfair competitive advantage over every appliance seller in the State who is playing by

4

the rules and that the State and its taxpayers have "been screwed out of millions of dollars of tax revenue that we were entitled to year after year."

¶ 12    Dan Hall, audit bureau manager for the Department of Revenue responded to the Lindbloms' email, stating that the Lindbloms "have it all pretty well correct from a tax perspective." Hall explained that the Department was going to send out a compliance alert to retailers to clarify when sales tax needed to be collected on the sale of appliances.

¶ 13    In June 2015, the Department of Revenue issued a compliance alert on the issue. The Department explained that an "investigation has revealed that some taxpayers are incorrectly treating sales of appliances and other tangible personal property as construction contracts and failing to remit Retailers' Occupation Tax (ROT)." The Department explained that the compliance alert was intended to assist taxpayers in determining if they are acting as retailers or construction contractors and clarify the tax liabilities for each type of transaction. The first line of the alert states that "[m]ost retailers will not act as a construction contractor." One particular paragraph of the compliance alert is particularly relevant here because it specifically uses the example of a dishwasher.

> "The sale of tangible personal property with a separate agreement to install it does not convert the retail sale to a construction contract. This frequently occurs when an appliance is sold, the purchaser requires installation of the appliance, and the invoice lists the charge for Installation separately. For example, a person may purchase a dishwasher at an appliance store and the seller and purchaser enter into a separate agreement for the installation of the dishwasher. The seller in this case would pay [sales tax] on the receipts from the sale of the dishwasher."

¶ 14    The Lindbloms discovered that, even after the June 2015 compliance alert was issued, Lowe's continued to not charge sales tax on installed dishwashers and over-the-range microwaves. The Lindbloms filed suit against Lowe's under the Illinois False Claims Act alleging that Lowe's was knowingly avoiding its tax obligations and presenting the State with false monthly tax returns.

¶ 15    The parties agreed to have a trial solely on the issue of liability and then, if necessary, have a subsequent trial on the issue of damages. The trial court conducted a bench trial over the course of three days. Several live witnesses testified, and voluminous documentary evidence was admitted.

¶ 16    At trial, Lowe's sought to prove that it acted as a "contractor" when it sold and arranged for the installation of built-in dishwashers and over-the-range microwaves. Lowe's explained that it primarily engages in two separate lines of business: (1) over-the-counter retail sales, which did not require contracts; and (2) real property improvements performed via written contract. Lowe's maintains that when it provides contracted-for real property improvements, providing installation services, it acts as a general contractor. Lowe's claims that when it installs dishwashers and over-the-range microwaves as part of its "contractor business" it takes ownership and control of the appliances before installing them and transferring ownership to the end-using customer.

¶ 17    When a customer wanted to purchase a dishwasher or an over-the-range microwave with installation, the customer would sign a written contract, pay in full, and leave the store with no tangible personal property. Lowe's would then assign a subcontractor, or installer, to perform the installation at the customer's property. Once the project was done, Lowe's would pay the

6

installer. From November 2009 to November 2015, Lowe's contracted to furnish and install 34,594 dishwashers and 12,429 over-the-range microwaves in Illinois.

¶ 18    The contracts that Lowe's used for dishwashers and microwaves were single written agreements that included entries for both merchandise and installation. The contract first lists the merchandise and includes the merchandise price. The contract then lists the installation description with the price for the labor. Then, the contract provides the total charges which lists the subtotal, followed by the amount of sales tax, and then the order total. Because Lowe's charged no sales tax, the subtotal and order total were the same. The contract then lists the terms and conditions which explain, among other things, that the "[p]rice owed by [the] Customer to Lowe's covers the Goods, Installation Services, and applicable taxes." The contract further provides that Lowe's is responsible for acquiring any licenses and permits necessary and that Lowe's warrants the work of the installer.

¶ 19    Lowe's submitted evidence about the process required for installing dishwashers and over-the-range microwaves in an attempt to show that the installation of these appliances was more like the permanent fixtures for which use tax is appropriate than the portable-type appliances for which sales tax is appropriate. Built-in dishwashers are installed in a cabinet opening under a countertop and must be secured to the cabinet or countertop and hard-wired into a building's electrical system. The installation project requires that three holes, up to 1.5", be cut into the cabinetry for a water supply line, drain hose, and electrical supply. According to Lowe's, removing built-in dishwashers causes damage: an empty opening in the kitchen cabinetry; large, visible holes in the cabinetry, and holes from the dishwasher being secured to the cabinetry or countertop.

¶ 20     Over-the-range microwaves are installed above a range and under cabinetry. The installation project requires holes to be drilled into the wall to accommodate toggle bolts for affixing the microwave. Holes must also be drilled into the bottom of the upper cabinet to connect the microwave via screws. A 1.5" hole must be cut in the bottom of the cabinet for the power cord. According to Lowe's, removing such microwaves causes damage: an empty opening in the kitchen cabinetry, and visible, substantial holes in the wall and cabinet.

¶ 21     Lowe's explained at trial that, in the event of the sale of a home, removing either built-in dishwashers or over-the-range microwaves would be contrary to a home buyers' expectations as consumers leave both those types of appliances in their home when they move.

¶ 22     Lowe's provided evidence at trial about the efforts it made to determine its tax obligations. Craig Price, a certified public accountant, was Lowe's Director of Sales and Use Tax during the relevant period. In the late 1990s, Price and others conducted a state-by-state analysis and generated a report of Lowe's sales and use tax responsibilities in each state depending on the laws in the given jurisdiction. The report lists some states where regular sales tax is due for built-in appliances and some states where use tax was Lowe's obligation. For Illinois, the report states that Lowe's was required to remit use tax for built-in dishwashers and over-the-range microwaves. Price considered Illinois' administrative regulation governing construction contractors, along with daily tax news and Department of Revenue informal guidance, and he compared that information with Lowe's contracts and practices to conclude that it was appropriate to remit use tax rather than sales tax.

¶ 23     Also in the late 1990s, Lowe's hired Martin F. Poer and Company, an accounting firm, to provide guidelines for the tax treatment of installed improvements to realty. Poer and Company included a list of examples of items that, "when sold on an installed basis *** constitutes

8

improvements to real property." The list includes built-in dishwashers. The report from Poer and Company does not mention microwaves in any way, but Lowe's claims that it "understood this advice to include over-the-range microwaves."

¶ 24    In 2005, Lowe's retained Pricewaterhouse Coopers LLP (PwC) to consider whether Lowe's is "subject to sales tax or use tax in the context of certain installed sales." PwC stated preliminarily in its analysis of Lowe's tax obligations in Illinois that, based on its review of the applicable regulation, "it is reasonable to conclude that most of Lowe's installed sales, other than those of appliances and freestanding items, result in permanent installation." PwC's report continues by explaining why most of Lowe's installed sales in Illinois would fall within the scope of the regulation such that use tax would be Lowe's obligation.

> "Most items sold by Lowe's as part of installed sales are bolted, glued, or otherwise attached in a manner that would cause damage to realty if removed. The items are home improvement products and, therefore, are adapted to the use of the realty. Finally, it is reasonable to assume that the installation is intended to be permanent because the items are of the sort that would not normally be removed if the realty were transferred."

Lowe's asserts in its brief on appeal that PwC "confirmed that built-in dishwashers and over-the-range microwaves were subject to Use Tax in Illinois." The report in the record on appeal remains redacted, so that assertion cannot be verified. Nevertheless, Lowe's claims that both PwC and Poer and Company agreed with Lowe's tax treatment of dishwashers and over-the-range microwaves, and it claims that it relied on that advice when paying use tax rather than sales tax in Illinois.

9

1-23-1163)
1-23-1177) Cons.

¶ 25    The Illinois Department of Revenue audited Lowe's tax practices in 2010. The audit was initiated to review Lowe's financial records from January 2008 to June 2010, and the purpose of the audit was to review Lowe's sales and use tax practices during that period. The Illinois Department of Revenue completed and closed the audit in 2016 and concluded that, "[a]fter reviewing [Lowe's] tax returns and corresponding records" the Department "determined that adjustments were needed." The Department assessed $85,865.54 in additional tax against Lowe's. The Department did not specifically address Lowe's taxation of built-in dishwashers or over-the-range microwaves, but that data was included in the data provided to the Department and no additional taxes were assessed for those installation items. Lowe's subsequently requested that its tax penalty be abated, and the Department granted Lowe's request explaining that Lowe's demonstrated "ordinary business care and prudence in executing [its] Sales & Use Tax obligations," it paid a substantial amount of taxes, and it was cooperative throughout the audit.

¶ 26    When the Illinois Department of Revenue's compliance alert was issued in 2015, Lowe's took the position that the Department was not casting doubt on or repudiating its tax practices. As stated above (*supra* ¶ 13), the compliance alert stated that "[t]he sale of tangible personal property with a separate agreement to install it does not convert the retail sale to a construction contract." Lowe's understood its practices to not fall within such a definition because it used a single contract for both the sale of the good and the installation—not a *separate agreement*. Lowe's continued its practice of only paying use tax for installed dishwashers and over-the-range microwaves until the time of trial.

¶ 27    At the trial on the issue of liability, the trial court ruled in favor of the Lindbloms and against Lowe's. The trial court found that Lowe's is almost exclusively a retailer and Lowe's is

10

not a contractor. The trial court explained that with regard to the installed appliance sales at issue, "the predominant or sole transaction is the retail sale and purchase of an appliance." The trial court further explained that Lowe's "is a retailer who sometimes installs appliances and not . . . [a] contractor who sometimes sells appliances." The trial court found that Lowe's "services of installation are incidental to their retail sales." Accordingly, the trial court concluded that Lowe's was obligated to have collected sales tax on these sales and did not.

¶ 28    The trial court additionally found that Lowe's distorted the law to its advantage and worked with tax consultants to construct arguments in favor of its desired interpretation. The trial court found Lowe's disregard of the Department of Revenue's compliance alert particularly problematic. Accordingly, the trial court found that Lowe's violated the Illinois False Claims Act (740 ILCS 175/1 *et seq.* (West 2022)) when it filed false tax returns with the State.

¶ 29    The case was then set to proceed to a separate trial on the issue of damages. During discovery, the Lindbloms had requested sales data from Lowe's from 2009 up to the time the discovery request was made. However, Lowe's refused to produce sales data for any period after 2015, when the Lindbloms filed their initial complaint. Lowe's took the position that there is a six-year statute of limitations period on the claims asserted by the Lindbloms, so they could only recover damages for the period from November 9, 2009 until November 9, 2015—the approximate date the initial complaint was filed.

¶ 30    At the liability trial, testimony was admitted in which Lowe's acknowledged it was continuing the challenged tax practice at the time of trial. On the basis of that testimony, the Lindbloms moved to conform their pleadings to the proof and amend their complaint to extend the period of damages through the time of trial.

¶ 31    The trial court granted the Lindbloms' motion to amend their pleadings, finding that there would be no prejudice or surprise to Lowe's. The trial court acknowledged that, after the complaint was amended, Lowe's would still have the opportunity to argue that the Lindbloms are not entitled to damages outside the original period.

¶ 32    The Lindbloms filed their amended complaint and continued to seek sales data for the extended period. Lowe's moved to dismiss the then-operative complaint but not based on any issue related to the period of allowable damages. While the motion to dismiss was pending, Lowe's informed the Lindbloms that, if the trial court denied its motion to dismiss, "then Lowe's will produce documents and/or information, by an agreed upon date, regarding the number of built-in dishwashers and over-the-range microwave ovens it furnished and incorporated pursuant to installation contracts from December 2015 through October 2019 ***." Lowe's reiterated that message at the hearing on the motion to dismiss.

¶ 33    After the trial court denied Lowe's motion to dismiss the newly amended complaint, the Lindbloms moved to compel Lowe's to produce sales data for the additional period covered by the amended complaint. The trial court denied the Lindbloms' motion to compel. The trial court explained that it was not going to reopen discovery and, because the Lindbloms' request for supplemental discovery was untimely, it was denying the motion to compel.

¶ 34    Proceeding to the trial on damages, the parties submitted written arguments for the trial court to consider in making a determination on the amount of damages to be awarded. The trial court entered judgment for $4,148,887 in unpaid sales tax in favor of the Lindbloms. The trial court declined to award damages for the amount of the municipal taxes that Lowe's would have paid on top of the State's portion of the sales tax. The trial court held that the Lindbloms were not entitled to damages for the period subsequent to the filing of the complaint from October

2015 to November 2019. The trial court held that the Lindbloms are not entitled to prejudgment interest, that Lowe's is not entitled to a set off for the use tax it paid during the damages period before trebling, and that the Lindbloms were entitled to a single penalty payment of $11,000 for one single and continuous tax avoidance.

¶ 35    The Illinois False Claims Act contains a provision for the recovery of reasonable attorney fees, costs, and expenses for a prevailing plaintiff. 740 ILCS 175/4(d)(2) (West 2022). The Lindbloms sought $2.5 million in attorney fees and costs and $31,391.35 in expenses. In its order on attorney fees, the trial court set forth, with citation, numerous of the considerations and rules by which courts generally set fee awards. The trial court listed what it determined to be the reasonable rate for each attorney that worked on the case and then listed an amount each attorney was to receive for the work. The grand total of the fees awarded to those attorneys was $1,321,014.97, which was slightly less than half of the requested fees. In that fee order, the trial court indicated that the order was the final order in the matter.

¶ 36    Both parties appealed. The Lindbloms argue the trial court erred in calculating damages and the reductions the court made in the attorney fee award. Lowe's challenges the trial court's liability ruling and challenges the trial court's ruling refusing to give it a set off for the amount of use tax paid during the damages period before trebling damages under the Act.

¶ 37                                      ANALYSIS

¶ 38    *I. Liability*

¶ 39    A person violates the Illinois False Claims Act if they make, use, or cause to be made or used, a false record or statement material to an obligation to pay or transmit money to the State, or if the person improperly avoids or decreases an obligation to pay or transmit money to the State. 740 ILCS 175/3(a)(1)(G) (West 2022). Under the Act, an "obligation" to pay means an

13

"established duty" to pay arising from a statute or regulation. 740 ILCS 175/3(b)(3) (West 2022).

Lowe's contends that it cannot be considered to have made a "false" record because 1) it did not

have a duty to collect and remit sales tax or, 2) at a minimum, there was genuine uncertainty

about its obligation to pay.

¶ 40    The parties disagree about the standard of review we should apply when considering

whether Lowe's had an obligation to collect sales tax on the dishwashers and microwave ovens it

installed. Lowe's argues that "the interpretation of what tax Lowe's was required to pay is a

question of law that this Court reviews *de novo*" (citing *Best Buy Stores, L.P. v. Department of

Revenue*, 2020 IL App (1st) 191680, ¶17). The Relators argue that we are reviewing the trial

court's factual finding following a bench trial so we should uphold the trial court's findings

unless they are against the manifest weight of the evidence (citing *Staes and Scallan, P.C. v.

Orlich*, 2012 IL App (1st) 112974, ¶ 35). To the extent we are required to interpret the law and

determine Lowe's tax obligations, we agree the standard of review is *de novo*.

¶ 41    However, to determine the tax obligation, certain threshold questions of fact were

decided by the trial court. Additionally, when the trial court was determining whether Lowe's

acted "knowingly" for purposes of the Illinois False Claims Act, the analysis required the trial

court to resolve factual questions about what Lowe's knew or should have known and to assess

the credibility of the witnesses who testified about Lowe's knowledge and institutional thinking,

among other considerations. We apply the manifest weight of the evidence standard when

reviewing such factual determinations. *People ex rel. Beeler, Schad & Diamond, P.C. v. Relax

the Back Corp.*, 2016 IL App (1st) 151580, ¶ 18; *People ex rel. Schad, Diamond & Shedden,

P.C. v. My Pillow, Inc.*, 2017 IL App (1st) 152668, ¶ 62.

¶ 42    Lowe's argument requires us to interpret a statute, the Retailers' Occupation Tax Act (35 ILCS 120/1 *et seq*. (West 2022)), and part of the Illinois Administrative Code. Administrative regulations, which have the force and effect of law, are interpreted as if they were statutes. *Best Buy Stores*, 2020 IL App (1st) 191680, ¶ 15. When construing a statute, our goal is to ascertain and give effect to the intent of the legislature. *Kean v. Wal-Mart Stores, Inc.*, 235 Ill. 2d 351, 361 (2009). We review the trial court's interpretation of an administrative regulation or statute *de novo*. *Cigna v. Illinois Human Rights Commission*, 2020 IL App (1st) 190620, ¶ 23.

¶ 43    The challenge to the liability finding is brought by Lowe's, the appellee-cross appellant as part of its cross-appeal in this case. However, we will begin our analysis by addressing Lowe's arguments on the issue of liability because if Lowe's prevails on that issue and there is no liability, any issues regarding damages and attorney's fees become moot. To prevail under the Illinois False Claims Act, plaintiff must first prove that Lowe's had an obligation to pay sales tax and second, that Lowe's knowingly filed false returns.

¶ 44    *A. Lowe's Obligation to Pay Sales Tax on Installed Appliances*

¶ 45    Under the Retailers' Occupation Tax Act (35 ILCS 120/1 *et seq*. (West 2022)), sellers of goods are required to collect and remit sales tax for all "sales at retail." Under the Act, "sale at retail" means any transfer of the ownership of or title to tangible personal property to a purchaser, for the purpose of use or consumption." 35 ILCS 120/1 (West 2022). It is "presumed that all sales of tangible personal property are subject to tax under this Act until the contrary is established, and the burden of proving that a transaction is not taxable hereunder shall be upon the person who would be required to remit the tax to the Department." 35 ILCS 120/7 (West 2022). The construction contractor regulation is an exception to the general rule that all sales of tangible personal property incur sales tax liability.

1-23-1163)
1-23-1177) Cons.

¶ 46　In Illinois, taxation is the rule; tax exemption is the exception. *Best Buy Stores*, 2020 IL App (1st) 191680, ¶ 18. A statute, or a regulation, providing a tax exemption is strictly construed in favor of taxation and against exemption. *Id*. The party seeking the exemption must prove that it is entitled to it, and it is a "very heavy burden." *Id*.

¶ 47　Under the construction contractor exception, "Contractor" means any person who is engaged in the occupation of entering into and performing construction contracts for owners. 86 Ill. Admin. Code § 130.1940 (West 2022). "A contractor holds himself out to the public as having the skill and knowledge necessary to the construction of certain improvements. He does not represent himself as being engaged in the business of selling building material." *J. H. Walters & Co. v. Department of Revenue*, 44 Ill. 2d 95, 103 (1969). Lowe's represents itself to the public as being a retailer. It holds itself out as, in its own words, the "world's second largest home improvement *retailer*." It refers to its stores as "retail selling spaces."

¶ 48　The definition of "contractor" in the relevant administrative regulation states that a contractor is a person who "is *engaged in the occupation* of entering into and performing construction contracts for owners (emphasis added)." 86 Ill. Admin. Code 130.1940 (West 2022). While Lowe's offered some contracted-for installation services, it was never engaged in the occupation of doing so. With regard to dishwashers and microwaves, it was a retailer of the goods, sometimes providing installation. The "primary" or "real" occupation of the taxpayer determines the tax classification. *Best Buy Stores*, 2020 IL App (1st) 191680, ¶ 21 (citing *Ingersoll Milling Machine Co. v. Department of Revenue*, 405 Ill. 367, 370 (1950)). When giving a written quote to customers for the sale of an installed appliance, Lowe's affirmatively disclaimed it was a contractor, telling the customer "Lowe's is a supplier of materials only.

16

Lowe's does not engage in the practice of engineering, architecture or *general contracting*

(emphasis added)."

¶ 49 For the relevant transactions, the installation of the appliances was incidental to the

transfer of the appliance to the customer. The overwhelmingly predominant part of the

transaction here was the sale of a good at retail. For tax purposes, Lowe's treated the sale with

installation of a single dishwasher or microwave as a construction project. The reality is that

Lowe's was selling an appliance at retail while also making an agreement to install the item

which does not transform the transaction into a construction contract. See *Best Buy Stores*, 2020

IL App (1st) 191680, ¶¶ 22-23.

¶ 50 Lowe's did not hold a contractor license in Illinois or in Chicago, in the area it competed

with the Relators. When it sold a single dishwasher or microwave to be installed, Lowe's did not

utilize its design services or otherwise use engineering services or specialized services for the

customer. It contracted for a simple installation that required no special skills, permits, or

licensing. Lowe's sales of dishwashers and microwaves with optional installation were identical

in almost every respect to its sales of those appliances without installation and to all its other

retail sales.

¶ 51 The evidence at trial demonstrated that all dishwasher and microwave customers at

Lowe's purchased the appliances in the same location, from the same stock of goods, and from

the same sales personnel regardless of whether they also purchased installation. All purchasers of

dishwashers and microwaves paid at the same cash register and received the same receipt

whether they purchased installation or not. The cost of the appliance itself was the same

regardless of whether the customer purchased installation services from Lowe's. Customers who

wanted installation paid a separately identified, fixed charge for the installation service, but the

appliance price was the same for everyone. Lowe's installed only those appliances that it sold.[2]

A customer could not buy stand-alone installation services from Lowe's. Lowe's would not install a dishwasher bought at another retailer as a contractor engaged in the business of installing would do. Customers could and often did purchase dishwashers and microwaves without installation which is quintessential retailing and the antithesis of a construction contractor. Lowe's transactions did not meet the requirements to be exempt from sales tax under the construction contractor exception.

¶ 52    In *Best Buy Stores*, 2020 IL App (1st) 191680, we addressed and rejected many of the same arguments Lowe's raises here. We rejected Best Buy's contentions that it was acting as a construction contractor when it made retail sales with installation of dishwashers and over-the-range microwaves. *Id*. at ¶¶ 4, 22. Although the *Best Buy Stores* ruling was issued in 2020, after the events in this case occurred, that case is illustrative of the difficulty a retailer has in establishing that it is acting as a construction contractor when selling appliances at retail and then installing them. While there are some differences that make *Best Buy Stores* not precisely analogous to this case, the general principles, as cited above, hold true here and apply to the transactions at issue such that the case is quite persuasive.

¶ 53    Based on the foregoing, we hold that the trial court's determination that Lowe's did not qualify as a "contractor" for purposes of the applicable administrative regulation was not against the manifest weight of the evidence. Even if we applied the *de novo* standard of review to this question, we would find that the trial court did not err in its conclusion that Lowe's was not

---

[2] Lowe's contends that the evidence actually shows it would install dishwashers other than those bought at its stores. This contention is not supported by the record. During one witness's trial testimony, Lowe's identified a single contract under which a dishwasher installation was paid for without a dishwasher purchase. In that case, however, Lowe's was doing a full kitchen remodel, and it disconnected and then reconnected the customer's dishwasher and charged a fee. Lowe's did not "install" a dishwasher purchased elsewhere, it merely reconnected the appliance.

acting as a construction contractor in these transactions. Accordingly, Lowe's was required to collect and remit sales tax for its sale of dishwashers and microwaves with installation.

¶ 54    *B. Liability Under the Illinois False Claims Act*

¶ 55    On appeal, Lowe's argues that there was no Illinois statute, caselaw, or binding administrative guidance about the tax treatment for dishwashers and microwaves during the period relevant to this case. Lowe's argues that the trial court therefore erred in finding there to have been an established duty to collect sales tax on those items. It argues that, at most, it was a disputed question whether sales tax needed to be collected, which means there could be no "established duty" on its part and, therefore, it did not knowingly file false returns.

¶ 56    Lowe's argues that its sale and installation service falls within the administrative code section where it is not obligated to collect sales tax because "[a] construction contractor does not incur Retailers' Occupation Tax liability as to receipts from … tangible personal property … incorporated into a structure as an integral part thereof … when furnished and installed as an incident of a construction contract." The Relators meanwhile contend that Lowe's was a retailer when it sold dishwashers and microwaves with installation and, therefore, it was required to collect and remit sales tax. The Relators contend that Lowe's acted with knowledge for purposes of the Illinois False Claims Act and, thus, was correctly found liable under the Act for filing false tax returns.

¶ 57    For the following reasons, we conclude that the Relators failed to prove that, prior to the June 2015 compliance alert issued by the Department of Revenue, Lowe's knowingly avoided its obligation to transmit sales tax to the State. The trial court's finding that Lowe's acted with knowledge or reckless disregard for the truth in determining its tax obligations during the period before the 2015 compliance alert was issued is against the manifest weight of the evidence.

19

¶ 58    The Illinois False Claims Act defines "knowingly" as: having actual knowledge, acting in deliberate ignorance of the truth, or acting in reckless disregard of the truth. 740 ILCS 175/3(b)(1)(A) (West 2022). It is not enough for a relator to show "mere '[i]nnocent mistakes or negligence.' " *State ex rel. Schad, Diamond & Shedden, P.C. v. National Business Furniture, LLC*, 2016 IL App (1st) 150526, ¶ 33. Rather, the Relators must prove that Lowe's "ignored obvious warning signs, buried its head in the sand, and refused to learn information from which its duty to pay money to the State would have been obvious." *Id.* at ¶ 39. Lowe's contends that it honestly assessed its tax obligations, engaged its own accounting department and outside professionals on the issue, relied on the outcome of its Department of Revenue audit, and otherwise made good faith efforts to comply with its tax obligations so that it cannot be found to have acted with the requisite scienter under the Illinois False Claims Act. We agree.

¶ 59    An initial consideration which supports our conclusion that the Relators failed to prove Lowe's acted with the requisite knowledge to be found liable under the Illinois False Claims Act prior to the Department of Revenue's compliance alert, is the audit covering the period from 2008 to 2010. The Illinois Department of Revenue conducted an audit of Lowe's sales and use tax returns. The express purpose of the audit was to review Lowe's sales and use tax practices in Illinois. Lowe's treatment of sales and use tax were the same as the period involved in this case. Lowe's submitted all the data regarding its treatment of sales and use tax to the Department of Revenue and the data was scrutinized by the auditors. The data specifically included entries concerning Lowe's tax treatment of installed dishwashers and over-the-range microwaves. The Illinois Department of Revenue completed and closed the audit in 2016. While it made corrections on the returns, the Department did not assess any additional taxes for Lowe's tax treatment of installed dishwashers or over-the-range microwaves. The Department did not raise

20

any issues during the entirety of the audit about Lowe's tax practices for the transaction types relevant to this case.

¶ 60　　Under Illinois law, the findings of the Department after an audit is evidence the proper amount was paid by the taxpayers: "In the event that the return is corrected for any reason other than a mathematical error, any return so corrected by the Department shall be prima facie correct and shall be prima facie evidence of the correctness of the amount of tax due, as shown therein." 35 ILCS 120/4 (West 2022). Here, the Department made changes to the returns that were not simply mathematical errors. Under Illinois law, the audit was *prima facie* proof that the proper amount of taxes was paid. *Id*.

¶ 61　　Lowe's argues it relied on the fact that the Department of Revenue had just reviewed its sales and use tax practices, and the Department did not find Lowe's to have been in violation of its tax obligations for the relevant transactions. Therefore, Lowe's did not fraudulently file the returns at issue. Indeed, the result of the audit demonstrate that State auditors found no fault with Lowe's practice when the audit was completed in 2016. Since State auditors gave the green light to Lowe's practices in the audit, it is difficult to reason how Lowe's knowingly filed false returns following the same procedures that were reviewed by the auditors.

¶ 62　　Additionally, in the words of the Relators themselves, the tax obligations on installed dishwashers and microwaves had been disputed in the industry for many years. There was significant evidence introduced at trial that Lowe's genuinely believed it was complying with Illinois tax law. Lowe's undertook significant internal and external independent review of its tax practices in an effort to determine its true tax obligations.

¶ 63　　At trial, the Relators' own evidence showed that there was disagreement in the industry about the tax consequences for sales of dishwashers and over-the-range microwaves where the

21

seller provided installation. The Relators acknowledged that the issue "has been a subject of debate for years within our industry." The Relators submitted evidence showing that Sears had been failing to collect and remit sales tax on installed dishwashers for 30 years. The Relators added that Lowe's and Home Depot had been failing to collect and remit sales tax on installed sales of dishwashers and over-the-range microwaves for 10 years. The state of the industry showed there was no consensus about the proper way to collect taxes on the relevant transactions.

¶ 64     Lowe's demonstrated at trial that it had made good faith efforts to determine its tax obligations, and the Relators did not prove that Lowe's ignored signs, buried its head in the sand, or refused to learn information about its true tax obligations. See *National Business Furniture*, 2016 IL App (1st) 150526, ¶ 39. Lowe's provided the testimony of Craig Price who testified that, as Lowe's Director of Sales and Use Tax, he and the employees in his department conducted a state-by-state analysis of Lowe's sales and use tax responsibilities depending on the laws in the given jurisdiction. For Illinois, Price and his department found that Lowe's was required to remit use tax for built-in dishwashers and over-the-range microwaves. They reviewed Illinois' administrative regulation governing the construction contractor tax exemption, Department of Revenue rulings and general information letters, and daily tax news, and they concluded that it was appropriate to remit use tax rather than sales tax for the relevant transactions. In other states, Price and his team found that the laws there dictated regular sales tax was due on the sale of built-in appliances, so Lowe's proceeded to pay sales tax in the places it genuinely believed such taxes were due.

¶ 65     Not relying solely on the analysis of its internal sales and use tax team, Lowe's hired both Martin F. Poer and Company and Pricewaterhouse Coopers, outside accounting firms, to

determine the appropriate tax treatment for installed dishwashers and over-the-range microwaves, among other items. Both firms concluded that Lowe's was acting in accordance with Illinois law when it was paying use tax rather than sales tax. An auditing firm, Deloitte, also reviewed Lowe's sales under installation contracts and did not raise any issue that Lowe's might be incorrectly applying Illinois tax law on its installed sales. The overwhelming weight of the evidence at trial showed that Lowe's made significant well-intentioned efforts to determine its tax obligations with regard to these installed sales. Those efforts along with the *prima facie* evidence provided by the audit results that their practice for installed appliances was *prima facie* correct lead us to conclude that the trial court's finding that Lowe's knew or should have known it was acting improperly prior to June 2015 is against the manifest weight of the evidence.

¶ 66    The trial court found that Lowe's acted dishonestly, inventing knowingly false distinctions to contort the law while working to craft ways to fall within the exception to the tax rather than making an honest effort to comply. The trial court found that Lowe's offered "knowingly false distinctions" to support its decision to avoid charging sales tax and that, if Lowe's honestly assessed its tax obligations, it would have concluded it owed sales tax for the installed appliance sales at issue. We conclude that the trial court's finding in that regard is not supported by the evidence. Instead, it is clearly evident that Lowe's made good faith efforts to determine its tax obligations and did not act "knowingly" for purposes of the Illinois False Claims Act. See *In re Deborah S.*, 2015 IL App (1st) 123596, ¶ 29 (a decision is against the manifest weight of the evidence when the opposite conclusion is apparent or when the findings are unreasonable, arbitrary, or not based on the evidence).

23

1-23-1163)
1-23-1177) Cons.

¶ 67     *C. Effect of the Compliance Alert*

¶ 68     Our finding with regard to Lowe's knowledge changes for the period after the Department of Revenue made it clear that the relevant transactions incur a sales tax obligation. In June 2015, the Department explained in a compliance alert that it conducted an investigation which revealed that some taxpayers were incorrectly treating the sale of appliances as construction contracts and failing to remit the required sales tax. Lowe's acknowledges that it received the Department's compliance alert. The Department explained prominently in its alert that "[m]ost retailers will not act as a construction contractor." The Department further explained that "[i]f a customer that is the end user of the tangible personal property comes in and makes a retail purchase and enters into a separate agreement for installation, the sale is an over-the-counter transaction subject to [sales tax]."

¶ 69     The Department stated in its compliance alert that a person acts as a retailer and not a construction contractor when the person sells "tangible personal property over-the-counter to the end consumer regardless of a separate contract to install the tangible personal property; he incurs [sales tax] on his gross receipts regardless of the tangible personal property being attached to real estate or not." The compliance alert provides two examples, both which directly address dishwashers. First, the Department explains in the alert that "if a contractor enters into an agreement with a person to remodel a kitchen and furnish and install cabinets and a dishwasher as part of the construction contract, the contractor pays Use Tax to his supplier, even if the contract breaks out the charges for the cabinets, dishwasher and installation." Second, the Department explains in the alert the type of transaction in which sales tax needs to be collected.

> "a person may purchase a dishwasher at an appliance store and the seller and
> purchaser enter into a separate agreement for the installation of the dishwasher.

24

The seller in this case would pay [sales tax] on the receipts from the sale of the dishwasher. If the purchaser buys an appliance and requests a list of persons that can install the item and the purchaser contracts with the person separately for the installation, the seller must pay [sales tax] on receipts received from the sale of the dishwasher."

¶ 70     The Department stated in the alert that "the sale of tangible personal property with a separate agreement to install it does not convert the retail sale to a construction contract. This frequently occurs when an appliance is sold, the purchaser requires installation of the appliance, and the invoice lists the charge for installation separately." Taking these two statements together, it is clear that the Department was notifying interested parties that when an appliance is sold and the invoice lists the sale of the good and then lists the charge for installation, the retail sale is not converted into a construction contract just because there is an agreement for installation of the good.

¶ 71     We find that the compliance alert should have caused Lowe's to revisit its tax practices for the subject transactions and that its failure to do so can be considered evidence of its desire to not learn about the proper interpretation of its tax obligations. The compliance alert specifically put Lowe's on notice that its assumptions about its tax obligations for installed dishwashers and over-the-range microwaves were incorrect, but it failed to change its practices. Despite Lowe's prior inquiries to outside advisors regarding its sales tax obligations for installed appliances, Lowe's did not engage with any such experts following its receipt of the compliance alert. Lowe's inaction after receiving the compliance alert evidences that it "ignored obvious warning signs, buried its head in the sand, and refused to learn information from which its duty to pay

money to the State would have been obvious." *National Business Furniture*, 2016 IL App (1st) 150526, ¶ 39.

¶ 72   The trial court found that the evidence showed Lowe's consciously disregarded the words and meaning of the compliance alert to suit its position that it was not required to collect and remit sales tax. The trial court concluded that the way Lowe's responded to the compliance alert showed that it was actively seeking out ways to avoid its tax obligations. The trial court disagreed that Lowe's interpreted the compliance alert in good faith and instead found that the Lowe's ignored the alert in furtherance of its desire to interpret its tax obligations in a particular way. The trial court further found that Lowe's was employing a self-serving interpretation of the alert and elevating form over substance. We cannot say those findings are against the manifest weight of the evidence.

¶ 73   Lowe's contends that the compliance alert continued to reinforce its understanding that use tax was its obligation and was not a break from any previous indications of the Department of Revenue's position on the issue. Particularly, Lowe's argues that its practice of having a single agreement to furnish and install a dishwasher means that it was not required to collect sales tax. Lowe's introduced evidence at trial that its internal tax professionals reviewed the compliance alert and were satisfied that Lowe's was doing exactly what was necessary to avoid paying sales tax, namely selling the good and contracting for installation on a single sheet of paper rather than separate ones. Lowe's maintains that, even if it misinterpreted the compliance alert, it did not do so recklessly.

¶ 74   The trial court found that Lowe's did act recklessly; that it acted with the necessary intent to be found liable under the Illinois False Claims Act when it disregarded the compliance alert and continued to employ the same tax practices it employed prior to the alert. Based on the

evidence, both documentary and trial testimony, and in consideration of its findings of fact and its credibility determinations, the trial court concluded that Lowe's purported reasons for failing to pay sales tax were "knowingly false" or at least revealed "a failure to exercise prudent judgment to discover the applicable standards." We find sufficient evidentiary support to sustain the trial court's conclusion that, after the Department of Revenue's compliance alert was issued, the alert should have caused Lowe's to revisit its tax practices and that its failure to do so constituted evidence of its desire to not learn about interpretations of the Act and Regulation. For that period, the trial court's factual findings are not against the manifest weight of the evidence.

¶ 75     To conclude, on the issue of liability, we hold that the trial court's finding that Lowe's acted with sufficient knowledge to violate the Illinois False Claims Act for the period from November 2009 to June 2015 is against the manifest weight of the evidence. We reverse the finding of liability against Lowe's that covers the period prior to June 2015. However, for the period beginning in June 2015 after the Department of Revenue's compliance alert was issued, the trial court's finding that Lowe's acted knowingly for purposes of the Illinois False Claims Act was not against the manifest weight of the evidence. The Relators proved that Lowe's was obligated to pay sales tax on its installed sales of dishwashers and over-the-range microwaves, and they submitted sufficient evidence from which the trial court was justified in concluding that Lowe's acted knowingly, in violation of the Illinois False Claims Act. [3]

---

[3] The Taxpayers' Federation of Illinois, the Illinois Chamber of Commerce, and the Illinois Retail Merchants Association submitted an amicus brief in support of Lowe's. In the amicus brief, the organizations ask us to establish a rule that qui tam actions and tax audits are mutually exclusive. The amici suggest that qui tam actions should not be available against a taxpayer who has already been audited by the Department of Revenue. We appreciate the amici's helpful and thoughtful brief, but we decline to adopt the bright-line rule for which they advocate. We acknowledge taxpayers' interests in the transparent and uniform application of tax laws, and we understand how such interests might be threatened by qui tam actions proceeding after or during a tax audit. We also recognize that, like in this case, an audit may conclude without specifically addressing the allegedly improper tax practice and qui tam proceedings can serve to answer questions of law unresolved by an audit. The rule that the amici urge us to adopt is a policy argument that is likely better left to the legislature to determine.

¶ 76    *II. Damages*

¶ 77    Both parties raise issues concerning the trial court's ruling on the question of damages. The Relators argue that: (1) the trial court improperly denied its motion to compel prior to the damages trial; (2) the trial court erred when it refused to award them damages for the local tax portion of the sales tax; (3) the trial court erred when it did not award them prejudgment interest; (4) the trial court erred when assessing only a single penalty for Lowe's numerous individual false claims; and (5) the trial court erred when it awarded them less than half of the attorney fees sought. On the other side, Lowe's argues that the trial court erred when it failed to credit and deduct the use tax Lowe's paid before trebling the damages in accordance with the Illinois False Claims Act's requirements (740 ILCS 175/3(a)(1) (West 2022)). We address the parties' contentions as set forth above.

¶ 78    *A. The Relators' Challenges*

¶ 79    *1. Damage Limitations Period*

¶ 80    Before the case went to trial, the parties agreed that they would first have a trial on the issue of liability and then, if necessary, have a trial on the issue of damages. The parties agreed that the damages calculation was going to be mostly formulaic in that the parties and the court would just need to examine Lowe's sales data to compute the amount of tax owed on its sales if it was found to be liable.

¶ 81    Since at least the time of discovery before the initial trial on liability, the Relators expressed an intent to expand the period of damages from the period initially set forth in their complaint. At trial, the Relators were able to elicit from Lowe's employees that their tax practices with regard to dishwashers and microwaves continued beyond the time the original complaint in this case was filed and, in fact, continued up to the point of the liability trial. Based

28

on those admissions, the Relators moved to amend their pleadings to the proof by expanding the period for which they sought damages.

¶ 82    The trial court allowed the Relators to amend their complaint. However, when the Relators sought to compel Lowe's to produce the sales data for the extended damages period, the trial court made a seemingly contradictory ruling. Lowe's had made oral and written commitments that it would provide the Relators with the additional sales data if the trial court enlarged the damages period. However, Lowe's later refused to produce the data, and the trial court denied the Relators' motion to compel the production of the sales data for the later period now covered by the amendment to the complaint.

¶ 83    In denying the motion to compel, the trial court reasoned that the trial was ongoing. However, the parties were not in the middle of an ongoing trial at the time the Relators made their discovery request. The parties and the trial court all agreed to conduct separate trials on the issue of liability and damages. Thus, the parties were in the pretrial phase of the upcoming trial on damages.

¶ 84    As a further reason for denying the Relators' motion to compel, the trial court found that the Relators were not entitled to the additional discovery because they had not secured the relevant evidence before the liability trial and their current request was untimely. But the evidence at issue became pertinent *because of* what happened during the liability trial when Lowe's employees admitted their continuation of the tax practice that the trial court found to be improper. The information sought is clearly relevant to the then-unresolved issue of damages and was, in fact, necessary for the Relators to prove their allegations. See Ill. S. Ct. R. 201(b) (eff. Mar. 17, 2023) (West Supp. 2023). It is impossible to reconcile the trial court's decision to allow

the Relators to amend their complaint to allege additional damages with its subsequent decision to prevent the Relators from securing the proof necessary to substantiate the amendment.

¶ 85    We find that the trial court's decision to deny the motion to compel lacks a legitimate basis and was manifestly unreasonable such that it constitutes an abuse of discretion. See *Favia v. Ford Motor Co.*, 381 Ill. App. 3d 809, 815 (2008) (an abuse of discretion occurs when the ruling is arbitrary, fanciful, or unreasonable, or when no reasonable person would take the same view). Accordingly, on remand, the Relators are entitled to seek discovery of the sales data for the period in which they are entitled to pursue damages. As expressed in Part I of this order, the Relators are not entitled to damages for the period preceding the issuance of the Department of Revenue's compliance alert, but they are entitled to pursue damages for the period from June 2015 to the point Lowe's was adjudged liable in this case, March 31, 2021.

¶ 86    *2. Local Tax Portion of the Sales Tax*

¶ 87    The Relators argue that the proper measure of damages in this case includes both State and local sales tax. They contend that Lowe's failed to collect or remit any sales tax and that, by allowing Lowe's to avoid paying the local portion of the tax, the trial court permitted Lowe's to keep a significant portion of the tax money it failed to collect and remit to the State.

¶ 88    The Relators point out that the Illinois False Claims Act requires that a relator bring its action "in the name of the State." 740 ILCS 175/4(b)(1) (West 2022). The Act defines the "State" to mean the State of Illinois itself as well as "any agency of State government; *** [and any] county, municipality, municipal corporation, [or] unit of local government ***." 740 ILCS 175/2(a) (West 2022). Thus, according to the Relators, when they sue under the Illinois False Claims Act, they must name only the "State," but they bring the case for the benefit of all the State's public entities, including any county, municipality, or other unit of local government

30

injured by the unlawful conduct. The Relators argue that "[t]he damages the 'State' incurred include the amounts the State would have distributed to local governments."

¶ 89    The Illinois Attorney General filed a statement of interest regarding the Relator's pursuit of the municipality portion of the sales tax that Lowe's failed to pay. The Attorney General set forth its position that the Relators here are correct: the Relators are entitled to recover for both the State and the municipalities that were defrauded by Lowe's failure to pay the appropriate tax. The Attorney General explained that Lowe's argument to limit the recovery to only the amount owed to the State is flawed because it ignores the expansive definition of "State" in the Illinois False Claims Act. The Attorney General explained that he is the sole authority to bring a False Claims Act case as the representative of the State, even if just a municipality or other smaller unit of government is allegedly defrauded. Thus, the Attorney General urged the trial court to include Retailers' Occupation Taxes owed to municipalities in the calculations for damages, fines, and fees, and reject Lowe's arguments that municipalities should be excluded from any such calculation.

¶ 90    Lowe's argues that the trial court correctly rejected the Relators' attempt to collect the local portions of the tax because the Relators did not separately allege in their complaint that they were seeking recovery of local taxes. Lowe's contends that the Relators' position that they were entitled to recover local taxes because they alleged a failure to pay State taxes is inconsistent with the requirement that a plaintiff, particularly in a fraud case, is required to plead facts supporting each element of liability (citing *Rodriguez v. Illinois Prisoner Review Board*, 376 Ill. App. 3d 429, 434 (2007); *Board of Education of City of Chicago v. A, C & S, Inc.*, 131 Ill. 2d 428, 457 (1989)).

¶ 91    Lowe's points out that the Relators have never identified or attempted to identify which local governments were defrauded. In their complaint, the Relators repeatedly allege that Lowe's violation of the Act was its knowing failure to remit the proper sales tax to the "State of Illinois." The Relators make allegations such as that defendants "knowingly failed to remit *to the state*" the required tax and that "[e]ach and every sale of a dishwasher and over-the-range microwave oven by each Defendant on which the Defendant failed to remit [sales tax] on the gross receipts of its sales *to the State of Illinois* is a violation of the Illinois False Claims Act." The Relators dedicate a section of their complaint to "Harm to Illinois and Its Citizens," but they do not address any harm to local governments. The Relators conclude their complaint by alleging that "[a]s a direct result of Defendants' conduct, Defendants have caused the State of Illinois to suffer a great financial loss." They do not specifically mention any financial losses for municipal units. The Relators make just one reference to the local portion of the sales tax in their complaint, but it has nothing to do with any fraud in failing to collect and remit local taxes. The trial court explained in its ruling on this issue that "the Relators have never made [any] allegation that they were whistleblowers or have knowledge regarding municipal government taxation."

¶ 92    While we agree with the Relators and the Attorney General's interpretation of the relevant statutes and acknowledge that the Attorney General or a relator has the ability to recover local taxes in a qui tam tax case, we do not find that the trial court erred when it limited the Relators' recovery to the State portion of the taxes in this case. The Relators simply failed to include sufficient substantive allegations about any fraud perpetrated on local governments. "The facts which constitute an alleged fraud must be pleaded with sufficient specificity, particularity and certainty to apprise the opposing party of what he is called upon to answer." *A, C & S, Inc.*, 131 Ill. 2d at 457. "A plaintiff must at least plead with sufficient particularity facts establishing

32

the elements of fraud, including what misrepresentations were made, when they were made, who made the misrepresentations and to whom they were made." *Id*. Here, the Relators failed to plead any facts that would establish anything about the supposed misrepresentations that were made regarding local taxes.

¶ 93 The Relators suggest that their allegations about State taxes are sufficient to encompass local taxes. However, local sales taxes are imposed by completely different statutes and ordinances than the State sales tax. The Relators did not put forth any evidence at trial concerning what municipalities were defrauded or what specific losses were incurred by municipalities. A defendant cannot be required to anticipate and defend against unspoken fraud claims just because the unspoken claims have some relation to the spoken claims. Simply put, the Relators' allegations about Lowe's false statements with regard to State tax were not sufficient to put Lowe's on notice that it needed to defend a claim for local taxes as well. And the Relators did not submit the necessary evidence at trial to prove such a claim. The trial court did not make any finding in its liability ruling that the Relators proved any fraud on Lowe's part with regard to local governments and we conclude that the trial court did not err when it limited the Relators' damages to the State portion of the Retailers' Occupation Tax.

¶ 94 The Relators contend that Lowe's waived any objection to its pursuit of local taxes because it answered the complaint and because evidence of the full amount of both the State and local portions of the tax was admitted at trial. Lowe's, however, answered a complaint that had no substantive allegations about any false statements concerning local taxes. It could not waive an objection to an issue not in the complaint by answering the other allegations. The party claiming implied waiver has the burden of proving a clear, unequivocal, and decisive act of the

33

opponent manifesting his intention to waive his rights. *Greene v. Helis*, 252 Ill. App. 3d 957, 962 (1993).

¶ 95    Moreover, Lowe's preserved its objection to the issue by including it in a motion *in limine*. We reject the Relators' contention that Lowe's waived this objection, and we similarly disagree with the Relators' contention that they remedied any pleading defect with the evidence introduced at trial. While the Relators sought to amend their complaint to include allegations about an additional period for which Lowe's should be liable based on trial evidence, they never sought to amend their complaint to include any allegations about local taxes or provide any information about local government units that were defrauded.

¶ 96    The Relators rely on our decision in *My Pillow*, 2017 IL App (1st) 152668 to argue that their allegations were sufficient to include all Retailers' Occupation Tax, both State and local. The Relators contend that it is not credible to believe that Lowe's was unaware that the Relators would be seeking damages that encompassed municipal government taxation (citing *My Pillow*, 2017 IL App (1st) 152668, ¶ 93). The case the Relators rely upon does not discuss local or municipal taxes. More importantly, the Relators are misguided to focus on the credibility of Lowe's beliefs as an attempted substitute for pleading, with particularity, the elements of a fraud claim.

¶ 97    We recognize that the current State sales tax rate is 6.25% and the current use tax rate is likewise 6.25%. By finding that the Relators are not entitled to damages for the local sales tax Lowe's did not remit, there may be no damages for the subject transactions for which Lowe's already paid the use tax. However, the taxes are computed differently (see 35 ILCS 120/2-10 (West 2022); 35 ILCS 105/3-10 (West 2022)) and Lowe's concedes in its briefing that, for the period covered by the original complaint, it paid $960,866 in use tax while it would have owed

$1,297,542 in State sales tax. The issue of the difference between the State portion of the sales tax Lowe's should have paid and the use tax Lowe's did pay after June 2015 must be resolved on remand in a new trial on the issue of damages.

¶ 98    *3. Prejudgment Interest*

¶ 99    The Relators contend that the trial court erred when it refused to award prejudgment interest. The Relators argue that a taxpayer that fails to pay sales tax "owes the State the unpaid tax with accrued interest 'from the date when such tax becomes past due (emphasis omitted).' " 35 ILCS 120/5 (West 2022); see also 35 ILCS 735/3-2 (West 2022). Generally, a trial court's decision about whether to award prejudgment interest will not be disturbed on appeal absent an abuse of discretion. *Lyon Metal Products, L.L.C. v. Protection Mutual Insurance Co.*, 321 Ill. App. 3d 330, 348 (2001).

¶ 100   Under the Retailers' Occupation Tax Act and the Uniform Penalty and Interest Act, prejudgment interest is generally recoverable because interest for a delinquent tax payment is required to make the government whole for the period of delinquency in which the taxpayer wrongfully retained the money. 35 ILCS 120/5 (West 2022); see also 35 ILCS 735/3-2 (West 2022). Here, however, the Relators' claim is brought under the Illinois False Claims Act, not the statutes cited above that the Relators rely upon for their claimed entitlement to prejudgment interest.

¶ 101   The Illinois False Claims Act, like the federal False Claims Act, does not provide for the recovery of prejudgment interest. See *Cook County, Illinois v. U.S. ex rel. Chandler*, 538 U.S. 119, 131 (2003). Like the parties, our independent research reveals no case in Illinois in which prejudgment interest was awarded under the Illinois False Claims Act. There is no statutory provision for prejudgment interest in the Act. We are persuaded by Lowe's citations to federal

False Claims Act cases wherein courts have concluded that prejudgment interest is unavailable under the Act. See, *e.g.*, *U.S. ex rel. International Brotherhood of Electric Workers Local Union No. 98 v. Fairfield Co.*, 5 F.4th 315, 337 (3rd Cir. 2021); *U.S. v. McLeod*, 721 F.2d 282, 285 (9th Cir. 1983). Moreover, it seems that the Illinois False Claims Act's requirement that the established damages be trebled may be a form of a substitution for the recovery of prejudgment interest and, in any event, the trebling of damages is very likely to make the plaintiff whole.

¶ 102   The Relators have failed to point to any statute or case law that would entitle them to prejudgment interest. The weight of the case law on false claims cases indicates that such interest is not available to a false claims plaintiff. The Relators have failed to show that the trial court erred or abused its discretion when the court denied the Relators' request for an award of prejudgment interest.

¶ 103   *4. Penalty for False Claim*

¶ 104   The Relators argue that Lowe's is liable for each false statement it made, and the trial court should have assessed the statutory penalty against Lowe's for each false claim. When assessing the required statutory penalty in this case, the trial court assessed one penalty against Lowe's for "a single and continuous tax avoidance strategy or scheme." The trial court penalized Lowe's for its scheme and not for each tax filing that was a part of the scheme.

¶ 105   The Illinois False Claims Act provides that any person who "knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the State, or *** improperly avoids or decreases an obligation to pay or transmit money or property to the State, is liable to the State for a civil penalty." 740 ILCS 175/3(1)(G) (West 2022). The Relators argue that the trial court should have imposed more than

100 separate statutory penalties against Lowe's, one for each tax return filed during the period relevant to this case.

¶ 106   Lowe's concedes here, as it did in the trial court, that the Illinois False Claims Act "imposes one penalty per violation." Lowe's further concedes that "[i]n a typical [Illinois False Claims Act] case, in which a defendant submits false claims for payment from the state, each submitted claim results in a penalty. But in a 'reverse' false claims case, like this case, the defendant does not submit false claims at all. Rather, the defendant 'knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the State.' " Even though this is a "reverse false claims case," the Relators have proved that, for the period after the June 2015 compliance alert was issued, each individual tax return filed by Lowe's constituted a false statement of its tax obligations. Because Lowe's was not collecting or remitting sales tax on its sales of dishwashers and microwaves with installation, each monthly tax return it filed after June 2015 falsely understated its sales tax liability.

¶ 107   Under the federal False Claims Act, "each individual false claim or statement triggers the statute's civil penalty" (*U.S. ex rel. Schwedt v. Planning Research Corp.*, 59 F.3d 196, 199 (D.C. Cir. 1995) (citing *United States v. Bornstein,* 423 U.S. 303, 313 (1976))) and the Illinois False Claims Act dictates the same result (740 ILCS 175/3(a)(1)(G) (West 2022)). We conclude that the trial court erred when it decided to impose a single penalty when its liability finding establishes the proposition that Lowe's made a false statement each time it filed a tax return.

¶ 108   Both in the trial court and here, Lowe's argues that the Relators waived their right to seek a penalty for each violation because the Relators asserted that their claim was comprised of a single violation. Indeed, the Relators made some statements that support Lowe's argument. The Relators stated that Lowe's violation is "a consistent, long term policy from 2009 through trial[.]

… That's our claim. That's our cause of action. That's our theory of recovery. We're not changing it, we're not adding to it, we're not altering it in any way." Lowe's argues that the Relators are making inconsistent allegations wherein the Relators frequently say they are only prosecuting a single claim, but then they also state that there were more than 100 violations.

¶ 109   We do not find the Relators allegations to be inconsistent. The Relators have one claim for a violation of the Illinois False Claims Act. Within that single claim, the Relators are alleging multiple individual false statements to the State, individual violations of the Act. Moreover, the Relators' submissions in this case indicate their clear intent to pursue a penalty for each violation of the Act, and we find no waiver.

¶ 110   In their complaint, the Relators stated that "The Illinois False Claims Act requires a violator to pay the State a civil penalty of not less than $5,000.00 and not more than $11,000.00 for each violation of the Act." They continue, "[e]ach tax return that conceals or avoids the obligation to remit [sales tax] on gross receipts from the sales of dish washers [sic] and over-the-range microwave ovens; each failure to make a required tax payment; and each accounting record that concealed the tax due the State of Illinois by Defendants, constitutes a separate violation." In their prayer for relief, the Relators requested that the trial court "impose on each Defendant civil penalties of no more than $11,000.00 and no less than $5,000.00 for each violation pursuant to 740 ILCS 175/3(a)(1)(g)."

¶ 111   In subsequent submissions to the court, the Relators explained to Lowe's and to the trial court that "each tax return is a … false request for payment, but … separate requests under the False Claims Act matter because each separate request is tied to a penalty[.] So, each one of these claims [or] requests for payment results in a penalty." The Relators further informed Lowe's and the trial court that "[p]enalties will attach to each return because each return is a

38

claim for payment." The Relators also stated that "each tax return is a violation of the False Claims Act for purposes of calculating penalties. Every time [Lowe's] submitted a tax return that did not disclose truthfully [its] tax obligation, [it is] subject to a penalty for that. So that's a violation." Finally, the Relators explained to Lowe's and to the trial court that, "[b]ecause there were 119 separate returns (November 2009 through October 30, 2019) during the damage period, the Court must impose 119 penalties."

¶ 112   We reject Lowe's claims of waiver, and we conclude that the trial court erred when it only assessed a single penalty. In light of Lowe's concessions on this topic and the evidence and arguments put forward by the Relators, the trial court should impose a penalty for each false record submitted by Lowe's from June 2015 to March 2021—each violation of the Illinois False Claims Act. See *U. S. ex rel. Marcus v. Hess*, 317 U.S. 537, 552 (1943) (superseded by statute on other grounds); *Planning Research Corp.*, 59 F.3d at 199.

¶ 113   *5. Attorney fees*

¶ 114   The Illinois False Claims Act contains a provision for the recovery of reasonable attorney fees, costs, and expenses for a prevailing plaintiff. 740 ILCS 175/4(d)(2) (West 2022). The Relators sought $2.5 million in attorney fees and costs and $31,391.35 in expenses. The trial court awarded a total of $1,321,014.97 in attorney fees, which was slightly less than half of the requested fees.

¶ 115   The Relators raise several arguments regarding the propriety of the trial court's attorney fee order, but it is unnecessary to specifically address the issues here because the liability for attorney fees will necessarily change because of our order. On remand, we direct the trial court to consider the issue of attorney fees, costs, and expenses anew. If, following a new hearing on attorney fees, the trial court believes deductions to the fee request are warranted, the trial court is

directed to state on the record the reasons for such deductions so we may review said deductions in case of an appeal. Because the issue must be considered anew on remand, we make no specific findings regarding the propriety of the trial court's fee award, and we vacate the trial court's order awarding attorney fees, costs, and expenses.

¶ 116   *B. Lowe's Challenge to Damages*

¶ 117   Lowe's argues that the trial court erred when it refused to grant a setoff before trebling damages. When a defendant is found liable under the Illinois False Claims Act, it is liable for 3 times the amount of damages that the State sustains because of the relevant conduct. 740 ILCS 175/3(a)(1) (West 2022).

¶ 118   In finding that Lowe's is liable in this case, the trial court found, and we agree, that Lowe's violated the Illinois False Claims Act for the period after June 2015 when it paid only use tax to the State rather than sales tax, which was its rightful obligation. According to the Relators, "[t]he amount of damages is the amount withheld from the government" (citing *U.S. v. Rogan*, 517 F.3d 449, 453 (7th Cir. 2008)).

¶ 119   We agree with Lowe's that damage award in this case should not have been trebled until after the trial court set off the use tax Lowe's paid. The State's measure of damages was never the total amount of sales tax Lowe's should have collected and remitted to the State. The State's measure of damages is the amount Lowe's should have collected and remitted for sales tax less the amount that it already remitted when it was contemporaneously paying use tax.

¶ 120   The parties both discuss the United States Supreme Court's decision in *Bornstein*. The Relators argue that, under *Bornstein*, when a wrongdoer is caught submitting a false claim, the prepayment of some of the damages should not be deducted from the damages that are doubled (now trebled). *Bornstein*, 423 U.S. at 316. But the *Bornstein* court's determination to disallow a

40

setoff before trebling damages is nonetheless framed in terms of trebling "actual damages." *Id*. The *Bornstein* court explained that, in that case, "the Government's actual damages are equal to the difference between the market value of the tubes it received and retained and the market value that the tubes would have had if they had been of the specified quality." *Id*. at 317 fn. 13. Here, the government's actual damages are equal to the difference between the taxes Lowe's should have paid and the taxes it did pay.

¶ 121 Going all the way back to the Relators' pre-suit email exchange with Dan Hall from the Department of Revenue, Hall informed the Relators that "if [Lowe's] paid use tax, we would give them credit for that." The Retailers' Occupation Tax Act provides that a taxpayer who erroneously pays Use Tax on goods when it should have charged and paid sales tax is entitled to credit the Use Tax against any sales tax liability. 35 ILCS 120/6 (West 2022). We are cognizant of the considerations the Relators point out about why trebling damages before giving any setoff is often appropriate: such as maximizing the deterrent impact and ensuring not to reward a party who has committed fraud against the government. Nevertheless, we think it is appropriate to award 3 times the amount of damages the government sustained as a result of Lowe's tax avoidance.

¶ 122 The United States Court of Appeals for the Seventh Circuit examined this question several years ago and discussed whether "net trebling" or "gross trebling" was proper under the federal False Claims Act. *United States v. Anchor Mortgage Corp.*, 711 F.3d 745, 749 (7th Cir. 2013). Net trebling would be the result Lowe's advocates for here, while gross trebling is what the Relators advocate for and the approach the trial court adopted. The Seventh Circuit explained that net trebling was the norm under statutes that require multiplying damages. *Id*. at 749-50. We find the net trebling approach to be appropriate under these facts.

¶ 123   Lowe's paid use tax to the government and the government retained that money. The government received an incontrovertible benefit from Lowe's use tax payments, even if Lowe's was at the same time avoiding its true tax obligation. Illinois was only deprived of the difference between the amount Lowe's was obligated to pay and the amount it did pay. The Illinois False Claims Act provides for the amount the court is supposed to treble: "the amount of damages which the State sustains because of the act of that person." 740 ILCS 175/3(a)(1) (West 2022). That provision comports with *Bornstein*'s discussion of "actual damages" and *Anchor Mortgage*'s net trebling approach.

¶ 124   The Relators rely on our decision in *My Pillow*, 2017 IL App (1st) 152668, ¶¶ 74-87 to argue that *Anchor Mortgage* is not applicable and that the trial court here correctly only gave Lowe's a setoff after trebling the damages. While *My Pillow* is similar to this case in many respects, there are some crucial differences that mandate a different result. Crucially, the *My Pillow* court observed that "My Pillow started remitting taxes only after [the] relator sued it for failing to do so. It was a preemptive, partial payment of the State's actual damages. If we allowed that to serve as a credit against the damages award *before* being trebled, we would render the treble-damages provision meaningless." *Id*. at ¶ 86 (emphasis in original). The *My Pillow* court followed the rationale in *Bornstein* in which the U.S. Supreme Court expressed a concern that a wrongdoer could simply pay its arrearage before judgment was entered against it and avoid the trebling effect of the False Claims Act. See *Bornstein*, 423 U.S. at 316. The *My Pillow* court explained that it agreed with the trial court "that, *at the time My Pillow failed to pay the sales tax it owed, the State was deprived of the sales tax My Pillow owed* to Illinois [irrespective of the amount My Pillow paid before the judgment.] (emphasis added)." *My Pillow*, 2017 IL App (1st) 152668, ¶ 87. Such is not the case here.

¶ 125   The rationale expressed for trebling before granting a setoff in *Bornstein* and in *My*

*Pillow* is not applicable in this case. Here, Lowe's started remitting taxes long before the Relator

filed suit. At the time Lowe's failed to pay the sales tax it owed, it was simultaneously paying the

use tax so that the State was only deprived of any difference in the obligations between the two

forms of taxation. While the actual damages in *My Pillow* constituted the entire amount of

unpaid sales tax, the actual damages here amount to the unpaid sales tax less the use tax that was

paid. Therefore, we find that the trial court erred in trebling the damages before setting off the

amount of use tax Lowe's paid during the relevant period. Instead, the trial court should have

taken the total amount Lowe's should have paid in sales tax and then granted Lowe's a setoff for

the use tax it paid and then trebled the difference—the amount of the government's actual

damages.

¶ 126   *III. Summary of Holdings*

¶ 127   We reverse the trial court's judgment of liability against Lowe's for the period from

November 2009 to June 2015. We affirm the trial court's judgment of liability against Lowe's

from the period of June 2015 to the point that the judgment of liability was entered on March 31,

2021.

¶ 128   We remand for a new trial on damages. Prior to the damages trial, the Relators are

entitled to discovery of Lowe's sales data for installed dishwashers and over-the-range

microwaves from June 2015 through March 2021. The Relators are not entitled to an award for

the local portions of unpaid sales tax. The Relators are not entitled to prejudgment interest. A

penalty must be assessed against Lowe's for each false tax return made from June 2015 to March

2021. The amount of attorney fees to be awarded under the Act's prevailing plaintiff provision

must be considered anew.

¶ 129    Lowe's is entitled to a setoff for the use tax it paid before the damages in the case are trebled. The trial court must treble the difference, if any, between the sales tax Lowe's was supposed to pay to the State and the use tax it did pay to the State for the same period.

¶ 130                                    CONCLUSION

¶ 131    Accordingly, we affirm in part, reverse in part, and remand for further proceedings consistent with this order.

¶ 132    Affirmed in part, reversed in part, and remanded for further proceedings.